Case No. 08-3798

United States Court of Appeals
*for the*
Eighth Circuit

JEREMY BRADEN,

Plaintiff-Appellant,

-v-

WAL-MART STORES, INC., STANLEY GAULT, BETSY SANDERS, DON SODERQUIST, JOSE VILLARREAL, STEPHEN R. HUNTER, DEBBIE DAVIS CAMPBELL, and JOHN AND JANE DOES 1-20,

Defendants-Appellees.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI,
SOUTHERN DIVISION (Dist. Court Case No. 08-03109-GAF)

BRIEF OF THE APPELLANT

**KELLER ROHRBACK L.L.P.**
Lynn Lincoln Sarko
Michael Woerner
Derek W. Loeser
Gretchen Freeman Cappio
Gretchen S. Obrist
Benjamin Gould
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
Telephone: (206) 623-1900
Facsimile No.: (206) 623-3384

**ALESHIRE ROBB, P.C.**
Gregory W. Aleshire
William R. Robb
2847 S. Ingram Mill Road
Suite A-102
Springfield, MO 65804
Telephone: (417) 869-3737
Facsimile: (417) 869-5678

# SUMMARY OF THE CASE AND STATEMENT CONCERNING ORAL ARGUMENT

Plaintiff Jeremy Braden filed this proposed class action on behalf of the Wal-Mart Profit Sharing and 401(k) Plan pursuant to section 502(a)(2) and (a)(3) of the Employee Retirement Income Security Act ("ERISA") against the fiduciaries of the Plan for violations of ERISA. The district court granted the fiduciaries' motion to dismiss under Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1). Braden argues that the district court erred in dismissing his claims under Rule 12(b)(6) and deciding under Rule 12(b)(1) that he lacked Article III standing to assert those claims for one year of the class period.

The question of pleading that this case raises is of exceptional and wide-ranging importance, and this Court has yet to issue a published opinion on many of the substantive ERISA questions presented here. Braden therefore believes that oral argument will be helpful and respectfully requests 20 minutes of argument for each side.

Appellate Case: 08-3798     Page: 2     Date Filed: 02/11/2009 Entry ID: 3516027

# TABLE OF CONTENTS

SUMMARY OF THE CASE AND STATEMENT CONCERNING
    ORAL ARGUMENT ..................................................................... i

TABLE OF CONTENTS ................................................................... ii

TABLE OF AUTHORITIES ...............................................................v

JURISDICTIONAL STATEMENT ......................................................1

STATEMENT OF ISSUES ................................................................1

STATEMENT OF THE CASE............................................................4

STATEMENT OF FACTS .................................................................5

    I.      Factual Allegations of the Complaint. .................................5

    II.     Parties. ..........................................................................10

    III.    Claims for Relief. ..........................................................11

SUMMARY OF THE ARGUMENT ..................................................12

STANDARD OF REVIEW ..............................................................14

ARGUMENT ..............................................................................15

    I.      To Adequately State a Claim Under Rule 8, an ERISA
         Plaintiff Need Only Allege Facts That, If True, Provide
         Plausible Grounds for Relief. ............................................15

    II.     Braden Alleges Facts That, If True, Provide Plausible
         Grounds for Relief Under the Excessive-Fee Claim..........16

         A.     ERISA Fiduciary Duties to Manage Plan Assets
              Prudently and Loyally Are Well Established. ........17

         B.     Because Braden Alleges Sufficient Facts, the
              Excessive-Fee Claim Is Plausible. ..........................20

Appellate Case: 08-3798    Page: 3    Date Filed: 02/11/2009 Entry ID: 3516027

C.     In Dismissing the Excessive-Fee Claim, the District Court Erred by Drawing Inferences in Defendants' Favor and Requiring Braden to Negate Them. ..........................................................30

D.     Dismissing the Excessive-Fee Claim Would Jeopardize Both Notice Pleading and ERISA's Protections Against Excessive Fees. ......................................31

III.   Braden Alleges Facts That, If True, Provide Plausible Grounds for Relief Under the Prohibited-Transaction Claim. ..........................................................37

A.     Braden Alleges Facts That, If True, Plausibly Suggest That Defendants Caused the Plan to Pay Unreasonable Compensation to Merrill Lynch. .....................38

B.     Braden Alleges Facts That, If True, Plausibly Suggest That Defendants Caused the Plan to Transfer Its Assets to Merrill Lynch. .....................................40

C.     In Dismissing Braden's Prohibited-Transaction Claim, the District Court Erred by Misreading the Complaint and Drawing Inferences in Favor of Defendants That Plaintiff Was Then Required to Negate. ..........................................................42

IV.   Braden Alleges Facts That, If True, Provide Plausible Grounds for Relief Under the Disclosure Claim. ..............................43

A.     ERISA Fiduciaries Must Disclose All Material Information That Could Adversely Affect Participants' Interests, Which May Include Information About Fees and Revenue Sharing. .....................43

B.     Because Braden Alleges Sufficient Facts, the Disclosure Claim Is Plausible. ...............................45

1.     Fees. .........................................................46

2.     Revenue Sharing. .......................................49

Appellate Case: 08-3798    Page: 4    Date Filed: 02/11/2009   Entry ID: 3516027

V.     Braden Successfully Alleges Derivative ERISA Claims.................51

     A.     Braden Alleges Facts That, If True, Provide Plausible Grounds for His Monitoring Claim.........................51

     B.     Braden Alleges Facts That, If True, Provide Plausible Grounds for Relief Under His Co-Fiduciary Liability Claim.........................................................53

VI.     Braden Has Article III Standing to State Claims Under ERISA on Behalf of the Plan. ...........................................54

CONCLUSION.....................................................................................58

CERTIFICATE OF COMPLIANCE.....................................................60

CERTIFICATE OF SERVICE ..............................................................61

DISTRICT COURT ORDER APPEALED FROM .....................ADD-1

ADDENDUM ..........................................................................ADD-15

UNPUBLISHED DECISIONS .................................................ADD-29

Appellate Case: 08-3798    Page: 5    Date Filed: 02/11/2009 Entry ID: 3516027

# TABLE OF AUTHORITIES

## Cases

*Aetna Health Inc. v. Davila*, 542 U.S. 200 (2004)..................................................57

*Anderson v. Resolution Trust Co.*, 66 F.3d 956 (8th Cir. 1995)............................31

*Anweiler v. Am. Elec. Power Serv. Corp.*, 3 F.3d 986 (7th Cir. 1993).................45

*Ball v. Memphis Bar-B-Q Co.*, 228 F.3d 360 (4th Cir. 2000) ...............................45

*Ballone v. Eastman Kodak Co.*, 109 F.3d 117 (2d Cir. 1997)...............................47

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007)........ *passim*

*Benton v. Merrill Lynch & Co.*, 524 F.3d 866 (8th Cir. 2008).............................29

*Boeckman v. A.G. Edwards, Inc.*, No. 05-658, 2007 WL 4225740
  (S.D. Ill. Aug. 31, 2007) .................................................................. 17, ADD-30

*Boykin v. KeyCorp*, 521 F.3d 202 (2d Cir. 2008) .................................................26

*Brown v. Am. Life Holdings, Inc.*, 190 F.3d 856 (8th Cir. 1999) .........................34

*Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101 (7th Cir. 1984).................16

*Coleman v. General Electric Co.*, 643 F. Supp. 1229 (E.D. Tenn.
  1986), *aff'd*, 822 F.2d 59 (6th Cir. 1987) ........................................................57

*Concha v. London*, 62 F.3d 1493 (9th Cir. 1995)............................................35, 56

*Devlin v. Empire Blue Cross & Blue Shield*, 274 F.3d 76 (2d Cir.
  2001) ....................................................................................................................47

*Donovan v. Mazzola*, 716 F.2d 1226 (9th Cir. 1983) ...........................................18

*Eckert v. Titan Tire Corp.*, 514 F.3d 801 (8th Cir. 2008).....................................29

*Erickson v. Pardus*, 551 U.S. 89, 127 S. Ct. 2197 (2007) ...............................32, 33

*Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410 (6th Cir. 1998)......................58

Appellate Case: 08-3798     Page: 6     Date Filed: 02/11/2009 Entry ID: 3516027

*Forbush v. J.C. Penney Co.*, 994 F.2d 1101 (5th Cir. 1993) ................................58

*Haddock v. Nationwide Financial Services Inc.*, 419 F. Supp. 2d 156
    (D. Conn. 2006) ...........................................................................40, 41

*Hill v. BellSouth Corp.*, 313 F. Supp. 2d 1361 (N.D. Ga. 2004) ...........................52

*Howe v. Varity Corp.*, 36 F.3d 746 (8th Cir. 1994) ................................................44

*In re AEP ERISA Litig.*, 327 F. Supp. 2d 812 (S.D. Ohio 2004) ...............48, 54, 57

*In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 284 F. Supp. 2d
    511 (S.D. Tex. 2003) ...........................................................................52

*In re Ford Motor Co. ERISA Litig.*, — F. Supp. 2d —, 2008 WL
    5377955 (E.D. Mich. Dec. 22, 2008) ............................................... 54, ADD-36

*In re Sprint Corp. ERISA Litig.*, 388 F. Supp. 2d 1207 (D. Kan. 2004) ..........47, 52

*In re Unisys Corp. Retiree Med. Benefit ERISA Litig.*, 57 F.3d 1255
    (3d Cir. 1995) ......................................................................................44, 47

*In re Unisys Sav. Plan Litig.*, 74 F.3d 420 (3d Cir. 1996) ..............................18, 48

*In re Westar Energy, Inc., ERISA Litig.*, No. 03-4032, 2005 WL
    2403832 (D. Kan. Sept. 29, 2005) ................................................... 51, ADD-72

*Int'l Primate Prot. League v. Adm'rs of Tulane Educ. Fund*, 500 U.S.
    72 (1991) ...............................................................................................56

*Kalda v. Sioux Valley Physician Partners, Inc.*, 481 F.3d 639 (8th Cir.
    2007) ........................................................................................... *passim*

*Katun Corp. v. Clarke*, 484 F.3d 972 (8th Cir. 2007) ...........................................15

*Kuper v. Iovenko*, 66 F.3d 1447 (6th Cir. 1995) ....................................................55

*LaRue v. DeWolff, Boberg & Assocs., Inc.*, 128 S. Ct. 1020 (2008) ....................55

*Lockheed Corp. v. Spink*, 517 U.S. 882 (1996) ....................................................37

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ...........................................54

Appellate Case: 08-3798   Page: 7   Date Filed: 02/11/2009   Entry ID: 3516027

*Mamot Feed Lot & Trucking v. Hobson*, 539 F.3d 898 (8th Cir. 2008)...............14

*Martin v. Feilen*, 965 F.2d 660 (8th Cir. 1992) ......................................................51

*Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134 (1985)................................36, 55

*Neighborhood Enters., Inc. v. City of St. Louis*, 540 F.3d 882 (8th Cir. 2008) .......................................................................................................48

*Neitzke v. Williams*, 490 U.S. 319 (1989).............................................................42

*Noble Sys. Corp. v. Alorica Cent., LLC*, 543 F.3d 978 (8th Cir. 2008)................14

*Pegram v. Herdrich*, 530 U.S. 211 (2000).......................................................16, 29

*Pell v. E.I. DuPont de Nemours & Co.*, 539 F.3d 292 (3d Cir. 2008)..................47

*Phones Plus, Inc. v. Hartford Fin. Servs. Group, Inc.*, No. 06-1835, 2007 WL 3124733 (D. Conn. Oct. 23, 2007) ............................... 41, ADD-104

*Placzek v. Strong*, 868 F.2d 1013 (8th Cir. 1989) .................................................57

*Reich v. King*, 867 F. Supp. 341 (D. Md. 1994) ....................................................17

*Reich v. Lancaster*, 55 F.3d 1034 (5th Cir. 1995) .................................................39

*Roth v. Sawyer-Cleator Lumber Co.*, 16 F.3d 915 (8th Cir. 1994) ...........17, 19, 31

*Rutledge v. Seyfarth, Shaw, Fairweather & Geraldson*, 201 F.3d 1212 (9th Cir. 2000) , *amended by* 208 F.3d 1170 (9th Cir. 2000)..........................37

*Saunders v. Farmers Insurance Exchange*, 537 F.3d 961 (8th Cir. 2008) .......................................................................................................30

*Schaaf v. Residential Funding Corp.*, 517 F.3d 544 (8th Cir. 2008), *cert. denied*, 129 S. Ct. 222 (2008)................................................................29

*Schaefer v. Arkansas Med. Soc'y*, 853 F.2d 1487 (8th Cir. 1988) ........................17

*Scheuer v. Rhodes*, 416 U.S. 232 (1974) ..........................................................31, 33

*Shea v. Esensten*, 107 F.3d 625 (8th Cir. 1997).................................................44, 50

Appellate Case: 08-3798     Page: 8     Date Filed: 02/11/2009 Entry ID: 3516027

*Shirk v. Fifth Third Bancorp*, No. 05-49, 2008 WL 4449024 (S.D. Ohio Sept. 26, 2008) .............................................................. *passim,* ADD-110

*Stufflebeam v. Harris*, 521 F.3d 884 (8th Cir. 2008) ............................................16

*Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506 (2002) ........................... 21, 26, 32, 39

*Taylor v. United Techs. Corp.*, No. 06-1494, 2007 WL 2302284 (D. Conn. Aug. 9, 2007) .......................................................... 23, 35, 45, ADD-130

*Tibble v. Edison Int'l*, No. 07-5359, slip op. (C.D. Cal. July 16, 2008) ........................................................................... 23, 41, 45, ADD-135

*Tussey v. ABB, Inc.* (Tussey I), No. 06-04305, 2007 WL 4289694 (W.D. Mo. Dec. 3, 2007) ......................................................... 56, 57, ADD-171

*Tussey v. ABB, Inc.* (Tussey II), No. 06-04305, 2008 WL 379666 (W.D. Mo. Feb. 11, 2008) ........................................................ 23, 35, ADD-181

*Ware v. Nicklin Assocs., Inc.*, 580 F. Supp. 2d 158 (D.D.C. 2008) .......................26

*Woods v. S. Co.*, 396 F. Supp. 2d 1351 (N.D. Ga. 2005) ......................................53

**Statutes**

28 U.S.C. § 1331 ...................................................................................................1

29 U.S.C. § 1291 ...................................................................................................1

ERISA § 3(14), 29 U.S.C. § 1002(14) ...............................................................37

ERISA § 404(a), 29 U.S.C. § 1104(a) ........................................................ *passim*

ERISA § 405(a), 29 U.S.C. § 1104(a) .......................................................1, 12, 53

ERISA § 406(a), 29 U.S.C. § 1106(a) ...................................................... 1, 11, 37, 38

ERISA § 408, 29 U.S.C. § 1108 ..............................................................1, 37, 40

ERISA § 502(a), 29 U.S.C. § 1132(a) ........................................................ *passim*

ERISA § 502(e), 29 U.S.C. § 1132(e) ...................................................................1

Appellate Case: 08-3798     Page: 9     Date Filed: 02/11/2009 Entry ID: 3516027

## Rules

Fed. R. App. P. 4(a) ................................................1

Fed. R. Civ. P. 12(b) ...................................... *passim*

Fed. R. Civ. P. 84 ..............................................33

## Other Authorities

Amended Brief of Secretary of Labor as Amicus Curiae Supporting
Plaintiffs-Appellants, *Hecker v. Deere & Co.*, Nos. 07-3605, 08-
1224 (7th Cir. Apr. 2, 2008), *available at*
www.dol.gov/sol/media/briefs/Deere(A)-04-02-2008.pdf .................44, 45, 49

Elaine L. Chao, U.S. Sec'y of Labor, *Get It Right: Responsibilities of
an ERISA Fiduciary* (May 28, 2004), *available at*
http://www.dol.gov/_sec/media/speeches/20040528_Yale.htm ...............51, 52

Employee Benefits Sec. Admin., U.S. Dep't of Labor, A Look at
401(k) Plan Fees (Aug. 1998), *available at*
http://www.dol.gov/ebsa/pdf/401kFeesEmployee.pdf .................................9, 18

Employee Benefits Sec. Admin., U.S. Dep't of Labor, Understanding
Retirement Plan Fees and Expenses (May 2004), *available at*
http://www.dol.gov/ebsa/pdf/undrstndgrtrmnt.pdf...........................................18

Appellate Case: 08-3798     Page: 10     Date Filed: 02/11/2009 Entry ID: 3516027

# JURISDICTIONAL STATEMENT

Plaintiff Jeremy Braden, on behalf of the Wal-Mart Profit Sharing and 401(k) Plan, sued Defendants under section 502(a)(2) and (a)(3) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(2) and (a)(3). Braden invokes those remedial provisions to enforce substantive rights and prohibitions under ERISA sections 404(a), 405(a), 406(a), and 408, 29 U.S.C. §§ 1104(a), 1105(a), 1106(a), and 1108. Accordingly, the district court had jurisdiction over this action pursuant to 28 U.S.C. § 1331 and ERISA section 502(e)(1), 29 U.S.C. § 1132(e)(1).

On October 28, 2008, the district court granted Defendants' motion to dismiss and entered a final judgment that disposed of all claims and parties and gives this Court jurisdiction over Braden's appeal. 29 U.S.C. § 1291. Braden timely filed his notice of appeal on November 25, 2008. *See* Fed. R. App. P. 4(a)(1)(A).

# STATEMENT OF ISSUES

## I.  Did Braden's Complaint Contain Facts That, If True, Provide Plausible Grounds for Relief Under ERISA for the Excessive-Fee Claim?

- *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007).

- *Roth v. Sawyer-Cleator Lumber Co.*, 16 F.3d 915 (8th Cir. 1994).

- *Tussey v. ABB, Inc.* (*Tussey II*), No. 06-04305, 2008 WL 379666 (W.D. Mo. Feb. 11, 2008).

- 1 -

- *Taylor v. United Techs. Corp.*, No. 06-1494, 2007 WL 2302284 (D. Conn. Aug. 9, 2007).

- ERISA § 404(a)(1)(A) & (B), 29 U.S.C. § 1104(a)(1)(A) & (B).

- Fed. R. Civ. P. 8; 12(b)(6).

## II. Did Braden's Complaint Contain Facts That, If True, Provide Plausible Grounds for Relief Under ERISA for the Prohibited-Transaction Claim?

- *Kalda v. Sioux Valley Physician Partners, Inc.*, 481 F.3d 639 (8th Cir. 2007).

- *Tibble v. Edison Int'l*, No. 07-5359, slip op. (C.D. Cal. July 16, 2008).

- *Shirk v. Fifth Third Bancorp*, No. 05-049, 2008 WL 4449024 (S.D. Ohio Sept. 26, 2008).

- *Haddock v. Nationwide Fin. Servs., Inc.*, 419 F. Supp. 2d 156 (D. Conn. 2006).

- ERISA § 406(a), 29 U.S.C. § 1106(a).

- Fed. R. Civ. P. 8; 12(b)(6).

## III. Did Braden's Complaint Contain Facts That, If True, Provide Plausible Grounds for Relief Under ERISA for the Disclosure Claim?

- *Kalda v. Sioux Valley Physician Partners, Inc.*, 481 F.3d 639 (8th Cir. 2007).

- *Howe v. Varity Corp.*, 36 F.3d 746 (8th Cir. 1994).

- *Shea v. Esensten*, 107 F.3d 625 (8th Cir. 1997).

- *Shirk v. Fifth Third Bancorp*, No. 05-049, 2008 WL 4449024 (S.D. Ohio Sept. 26, 2008).

- ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A).

- Fed. R. Civ. P. 8; 12(b)(6).

Appellate Case: 08-3798    Page: 12    Date Filed: 02/11/2009 Entry ID: 3516027

**IV. Did Braden's Complaint Contain Facts That, If True, Provide Plausible Grounds for Relief Under ERISA for Monitoring and Co-Fiduciary Liability?**

- *Martin v. Feilen*, 965 F.2d 660 (8th Cir. 1992).

- *Woods v. S. Co.*, 396 F. Supp. 2d 1351 (N.D. Ga. 2005).

- *In re Westar Energy, Inc., ERISA Litig.*, No. 03-4032, 2005 WL 2403832 (D. Kan. Sept. 29, 2005).

- ERISA § 404(a)(1)(A) & (B), 29 U.S.C. § 1104(a)(1)(A) & (B).

- ERISA § 405(a), 29 U.S.C. § 1105(a).

- Fed. R. Civ. P. 8; 12(b)(6).

**V. Does Braden Have Article III Standing to State Claims Under ERISA on Behalf of the Plan for the Entire Class Period?**

- *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992).

- *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134 (1985).

- *Int'l Primate Prot. League v. Adm'rs of Tulane Educ. Fund*, 500 U.S. 72 (1991).

- *Tussey v. ABB, Inc.* (*Tussey II*), No. 06-04305, 2008 WL 379666 (W.D. Mo. Feb. 11, 2008).

- ERISA § 409(a), 29 U.S.C. § 1109(a).

- ERISA § 502(a)(2) and (a)(3), 29 U.S.C. § 1132(a)(2) & (a)(3).

- U.S. Const. Art. III.

- Fed. R. Civ. P. 12(b)(1).

Appellate Case: 08-3798    Page: 13    Date Filed: 02/11/2009 Entry ID: 3516027

## STATEMENT OF THE CASE

This appeal arises from a class action filed in the Western District of Missouri by Plaintiff Jeremy Braden ("Braden") against the fiduciaries of the Wal-Mart Profit Sharing and 401(k) Plan ("Plan"). Braden is an employee of Wal-Mart Stores, Inc. and a participant in the Plan, and brings this case on behalf of the Plan under section 502(a)(2) and (a)(3) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(2) and (a)(3), for violations of ERISA.

The complaint alleges that the Plan fiduciaries failed to discharge their responsibilities under ERISA to prudently and loyally select and manage the Plan's investment options. Despite being one of the largest 401(k) plans in the country, with significant bargaining power, the Plan fiduciaries selected retail mutual funds that were far more expensive than readily available comparable fund options. These particular funds were selected because they had "revenue-sharing" arrangements with the Plan Trustee, Merrill Lynch. "Revenue sharing" is a retirement investment industry term of art for *quid pro quo* payments that mutual fund companies make to a plan trustee in exchange for being included in a plan's menu of investment options. The complaint alleges that if the Plan fiduciaries had established and adhered to a prudent process for the selection of fund options, as required by ERISA and the Department of Labor's guidelines and regulations, the Plan would have saved tens of millions of dollars of unnecessary fees and

- 4 -

expenses.  Over time, because of the compound impact of excessive fees, this would have resulted in substantially more retirement savings for Plan participants. Braden also alleges that the Plan fiduciaries failed to comply with their ERISA-imposed duty to give Plan participants complete and accurate information about the excessive fees and revenue sharing.

The primary issue before the Court is whether Braden's complaint meets the pleading standards of Federal Rule of Civil Procedure 8.  This appeal also presents the question of Braden's Article III standing to assert claims for one year of the class period.

On October 28, 2008, the district court granted Defendants' motion to dismiss all counts stated in the complaint.  Braden appeals the district court's order granting Defendants' motion to dismiss.  He contends that the court below erred when it granted the motion, and that he should have the opportunity to substantiate his well pled claims with evidence obtained through discovery.

## STATEMENT OF FACTS

### I.  Factual Allegations of the Complaint.

The Wal-Mart 401(k) Plan is one of the largest 401(k) retirement plans in the country.  Appx. 93.  It has over one million participants and holds nearly ten billion dollars of Wal-Mart employees' retirement savings.  Appx. 93-94.  Wal-Mart employees who work 1000 or more hours per year are eligible to participate

- 5 -

in the Plan, Appx. 23, ¶ 37, and direct their Plan contributions among a menu of investment options, Appx. 24, ¶ 40.  Although participants are able to choose among these available options, it is the Plan fiduciaries, not participants, who decide what the available options are in the first place.  Appx. 24, 70-71, ¶¶ 41, 169.  The fiduciaries include Wal-Mart and a number of Wal-Mart executives, whose specific identities and responsibilities are set forth in detail in the complaint. Appx. 19-21, ¶¶ 21-29; *see also infra* pp. 10-11.  In addition, during the proposed class period, Merrill Lynch & Co., Inc.[1] served as the Plan Trustee and held the assets of the Plan in trust pursuant to the Trust Agreement.

Plan participants use their contributions to buy shares of the mutual funds offered by the Plan.  The shares in most of the mutual funds that the Defendants selected for inclusion in the Plan are "Retail Class" shares, which are aimed at individual and not institutional investors.  Appx. 32, ¶ 67.  This is unusual, because plans as large as Wal-Mart's have the ability to obtain "Institutional Class" shares, which are vastly less expensive than Retail Class shares.  Appx. 32, ¶ 67.

The investment options that are the subject of this action are ten different mutual funds that charge fees to the Plan.[2]  Appx. 12-13, 31, ¶¶ 1, 64.  These fees,

---

[1] Merrill Lynch & Co., Inc., together with its subsidiaries, will be referred to collectively as "Merrill Lynch."

[2] This Brief refers to those funds as "funds" or "mutual funds" to differentiate them from the Plan's non-mutual-fund options.  The complaint refers to the ten funds as "Plan Investment Options."

Appellate Case: 08-3798     Page: 16     Date Filed: 02/11/2009 Entry ID: 3516027

which are taken out of Plan assets invested in the funds, are abnormally high—as much as six times as large as the fees charged by comparable, readily available funds. Appx. 37, ¶ 75; *see also* Appx. 34-36, 38-42, ¶¶ 72-74, 76-79. Moreover, most of those figures come from comparisons made with funds that are available to *retail* investors. Appx. 34-36, 39-42, ¶¶ 72-74, 77-79. The disparity would be even greater in comparison to the institutional funds that the Plan's market power would have easily allowed it to make available to participants. *See* Appx. 34-36, 39-42, ¶¶ 72-74, 77-79. Defendants knew or should have known of the availability of far less expensive comparable funds in the marketplace. Appx. 31, ¶ 66.

Moreover, the performance of the funds selected and maintained by Defendants has fallen short of comparable actively managed plans, and in many instances has not matched the performance of passively managed index funds. Appx. 43, ¶ 82. Braden's complaint, therefore, alleges that fund performance cannot properly explain why Defendants have retained the funds that the Plan makes available.

The complaint alleges that it is not accidental that the Plan's funds are abnormally expensive and fail to take advantage of the substantial economies of scale afforded to a plan of Wal-Mart's size. The Plan offered this particular set of ten mutual funds out of many thousands of fund options because each fund agreed to pay the Plan Trustee, Merrill Lynch, a portion of the fees that the mutual fund

- 7 -

companies charge to the Plan. Appx. 63, ¶ 140. This practice, called "revenue sharing," corrupted the Plan's fund-selection process. Instead of a prudent process that carefully evaluated the merits of each fund and chose those that served the best interests of Plan participants, Defendants acquiesced to a line-up of only those funds that had agreed to pay a kickback to the Trustee. Appx. 57, ¶ 120. Further compounding the problem, Wal-Mart contractually agreed in the Trust Agreement with Merrill Lynch to conceal from Plan participants the amount of revenue sharing reaped by the Trustee from its side arrangement with the fund companies. Appx. 50-51, ¶¶ 103-104. Although defenders of revenue-sharing schemes sometimes suggest that the fees paid to a trustee offset the cost of administrative services provided by a trustee to a plan, here, the substantial sums paid to the Trustee by the fund companies far outweighed the cost of whatever services the Trustee provided to the Plan. Appx. 68, ¶ 161.[3]

Braden alleges, then, that Defendants imprudently selected excessively expensive mutual funds and allowed Merrill Lynch to receive improper kickbacks

---

[3] The complaint alleges that the funds' inclusion in the investment options offered to participants was due to the revenue-sharing payments to Merrill Lynch, *see* Appx. 63, ¶ 140 (revenue-sharing payments made "in exchange for" inclusion), and that Defendants, while knowing of those payments, acquiesced in the inclusion of the funds, Appx. 57, ¶ 120. If in fact Merrill Lynch *itself* selected the menu of options, then it functioned as an ERISA fiduciary in that respect. *See Tussey v. ABB, Inc.* (*Tussey II*), No. 06-04305, 2008 WL 379666, at *7 (W.D. Mo. Feb. 11, 2008). However, the precise scope of Merrill's actions could not be determined based on the limited information available to Braden at the outset of this case.

Appellate Case: 08-3798     Page: 18     Date Filed: 02/11/2009 Entry ID: 3516027

from those funds. Because these excessive fees are taken out of assets that would

otherwise be appreciating, they act as a kind of reverse compound interest and

have a remarkable cumulative effect. The following chart, presented in the

complaint, demonstrates the effect that excessive fees have on returns over a

twenty-year period of time. It assumes an average annual growth rate of 7%, and

compares the difference in account balances between a fund that has a 1.5%

expense-to-value ratio and a fund with a 0.5% expense-to-value ratio:



At the end of 35 years, the difference in fees and expenses reduces the more

expensive fund's account balance by a full 28%. *See* Appx. 47, ¶ 93; *see also*

Employee Benefits Sec. Admin., U.S. Dep't of Labor, A Look at 401(k) Plan Fees

2 (Aug. 1998), *available at* http://www.dol.gov/ebsa/pdf/401kFeesEmployee.pdf.

Appellate Case: 08-3798    Page: 19    Date Filed: 02/11/2009 Entry ID: 3516027

In this case, Braden estimates that during just the six years preceding the filing of the complaint, the excessive fees and expenses caused a loss of between $62 million and $92 million. Appx. 42, ¶ 80; *see also* Appx. 34, ¶ 71.

Braden alleges not just the imprudent selection and retention of excessively expensive mutual funds, but also Defendants' failure to properly disclose information about those funds. As he alleges in the complaint, Defendants failed to completely and accurately inform Plan participants about the impact that the mutual funds' excessive fees have on their retirement savings, the ready availability of far less expensive, comparable, and better performing funds, and the influence that revenue sharing had on fund selection. Appx. 50, ¶ 102.

## II. Parties.

Plaintiff Jeremy Braden is an employee of Wal-Mart Stores, Inc. The Defendants named in this action are fiduciaries for the Plan. Because their status as fiduciaries is not at issue in this action, Braden will only briefly discuss their identities and for simplicity's sake will refer to them as "Defendants" in this Brief. *See* Appx. 19-21, ¶¶ 21-29 (describing Defendants in detail).

Wal-Mart Stores, Inc. is the Plan Administrator. Stanley Gault, Betsy Sanders, Don Soderquist, and Jose Villarreal are members of the Compensation and Nominating Committee of the Board of Directors, which had appointment and monitoring responsibilities over the Plan. Stephen R. Hunter and Debbie Davis

Appellate Case: 08-3798    Page: 20    Date Filed: 02/11/2009 Entry ID: 3516027

Campbell both held the office of "Vice President, Retirement Savings" for Wal-Mart Stores, Inc. during the class period, and had certain fiduciary duties flowing from that position. The members of the Retirement Plans Committee of the Board of Directors, another committee with fiduciary responsibilities, are named as "Doe" Defendants because their identities are unknown to Braden.

### III. Claims for Relief.

Based on these allegations, Braden brings five claims for relief:

- **The Excessive-Fee Claim:** Defendants who were responsible for the selection of investment options for the Plan failed to prudently and loyally evaluate investment options for their participants, and instead selected unreasonably expensive mutual funds that substantially diminished the retirement savings of Plan participants. ERISA § 404(a)(1)(A) & (B), 29 U.S.C. § 1104(a)(1)(A) & (B); *see also* Appx. 55-58, ¶¶ 115-123.

- **The Prohibited-Transaction Claim:** Defendants caused the Plan to engage in prohibited transactions with the Plan Trustee, Merrill Lynch, whereby the Plan assets were transferred to and used for the benefit of Merrill Lynch. ERISA § 406(a), 29 U.S.C. § 1106(a); *see also* Appx. 66-70, ¶¶ 157-166.

- **The Disclosure Claim:** Defendants breached their fiduciary duties by failing to completely and accurately inform the Plan's participants about the impact that the mutual funds' excessive fees have on their retirement savings, the ready availability of far less expensive funds, and the influence that revenue sharing had on fund selection. ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A); *see also* Appx. 61-64, ¶¶ 134-144.

- **The Monitoring Claim:** Defendants who were responsible for the appointment of the Plan's other fiduciaries failed to properly monitor the performance of their fiduciary appointees and to remove and replace those whose performance was inadequate. ERISA §

- 11 -

404(a)(1)(A) & (B), 29 U.S.C. § 1104(a)(1)(A) & (B); *see also* Appx. 58-61, ¶¶ 124-133.

- **The Co-Fiduciary Liability Claim:** Defendants breached their duties and responsibilities as co-fiduciaries by failing to prevent breaches by other fiduciaries of their duties of prudent and loyal management, complete and accurate communications, and adequate monitoring. ERISA § 405(a), 29 U.S.C. § 1105(a); *see also* Appx. 64-66, ¶¶ 145-156.

## SUMMARY OF THE ARGUMENT

The district court, principally by misapplying pleading standards, erroneously granted Defendants' motion to dismiss. Its order should be reversed.

Braden alleges in his Excessive-Fee Claim that Defendants were imprudent and disloyal in their evaluation, selection, and monitoring of the mutual fund options they chose to make available to Plan participants. He fully supports that allegation with facts that provide plausible grounds for relief. This is sufficient under well accepted notice-pleading standards as applied in Supreme Court and Eighth Circuit case law. The district court erred in two main ways. It demanded that Braden negate the inferences it drew in favor of Defendants, which is an inappropriate demand on a motion to dismiss. And it required specific allegations about the details of Defendants' decision-making, which are facts to which Braden could not have access in advance of discovery, and did not need access to state plausible claims for relief. In short, the district court applied a heightened pleading standard that the Supreme Court has rejected.

- 12 -

The district court also erred in dismissing Braden's Prohibited-Transaction Claim. Like his Excessive-Fee Claim, Braden supports his claim of prohibited transactions with fully fleshed-out allegations of fact. Once again, however, the district court drew inferences in favor of Defendants and then insisted that Braden eliminate those inferences as possibilities, demanding that Braden meet a heightened pleading standard and allege specific facts to which Defendants had purposely denied him access. This too was error.

The district court's treatment of the disclosure claim was flawed as well. The court decided that Defendants do not have any obligation as ERISA fiduciaries to disclose truthful and accurate information regarding the fund selection process, the amount of revenue sharing paid to the self-interested Trustee, the impact of excessive fees on participants' retirement savings, or the availability of comparable, far less expensive funds in the marketplace. This, however, is precisely the type of critical information that ERISA fiduciaries must provide to allow participants to make informed choices about their retirement savings in the Plan. The district court further held, without the benefit of any evidence, that the omitted and inaccurate information was not material. It was error for the district court to decide this issue at the pleading stage before Plaintiff has the opportunity to substantiate his entirely plausible claim.

- 13 -

Finally, the district court held that the monitoring and co-fiduciary claims (both derivative of the underlying breach claims) lacked merit. Because the district court erred in its dismissal of the underlying claims, its dismissal of the derivative claims also was error.

Notably, on remand, Defendants will have a chance to adduce evidence in support of the factual inferences that they urged below and that the district court drew in their favor. *See, e.g.*, Appx. 1211-12 (dismissing Excessive-Fee Claim because defendants "could have chosen funds with higher fees for any number of reasons"). A reversal of the district court's order would not imply that Braden should prevail—whether on summary judgment or at trial—once discovery is completed. It would merely hold that the district court misapplied pleading standards, that Braden's complaint has alleged plausible grounds for relief, and that he is entitled to discovery.

## STANDARD OF REVIEW

This Court reviews a district court's dismissal order *de novo*. *Noble Sys. Corp. v. Alorica Cent., LLC*, 543 F.3d 978, 981 (8th Cir. 2008) (review of district court's Rule 12(b)(6) dismissal is *de novo*); *Mamot Feed Lot & Trucking v. Hobson*, 539 F.3d 898, 901 (8th Cir. 2008) (review of district court's Rule 12(b)(1) dismissal is *de novo*). In so doing, this Court "tak[es] all well pleaded factual

- 14 -

allegations as true and draw[s] all reasonable inferences in favor of the plaintiff." *Katun Corp. v. Clarke*, 484 F.3d 972, 975 (8th Cir. 2007).

## ARGUMENT

### I.  To Adequately State a Claim Under Rule 8, an ERISA Plaintiff Need Only Allege Facts That, If True, Provide Plausible Grounds for Relief.

Under Federal Rule of Civil Procedure 8, a plaintiff must make "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The Supreme Court's recent decision in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007), has clarified what Rule 8 requires. A plaintiff, the *Twombly* Court said, need only plead "enough facts to state a claim to relief that is plausible on its face."  127 S. Ct. at 1974.  While merely pleading legal conclusions will not satisfy a plaintiff's burden, the pleading requirement is not heavy: the inquiry is whether the plaintiff has pled enough to "nudge [his] claims across the line from conceivable to plausible."  *Id.*

To require plausibility, the Supreme Court has said, is not to require a showing of "probability . . . at the pleading stage."  *Id.* at 1965.  A complaint may proceed even if a court believes that, in the end, "recovery is very remote and unlikely."  *Id.* (citation and internal quotation omitted).  The Federal Rules require only that the right to relief rise "above the speculative level," *id.*, that it be more than merely "conceivable," *id.* at 1974.

- 15 -

In evaluating a complaint for plausibility, a district court must accept all of a plaintiff's factual allegations as true and—what is especially crucial here—give the plaintiff and not the defendant the benefit of all reasonable inferences. *See, e.g.*, *Twombly*, 127 S. Ct. at 1965; *Stufflebeam v. Harris*, 521 F.3d 884, 886 (8th Cir. 2008). If a complaint's "direct or inferential allegations" contain "all material elements necessary to sustain recovery under some viable legal theory," then the complaint states a valid claim. *Twombly*, 127 S. Ct. at 1969 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)). All that is required is that the inferential allegations not be speculative or merely conceivable, *see id.* at 1966, 1974, and Braden easily clears that hurdle.

## II. Braden Alleges Facts That, If True, Provide Plausible Grounds for Relief Under the Excessive-Fee Claim.

To state an ERISA claim for breach of fiduciary duty, a plaintiff must allege that (1) the defendant was a fiduciary of the plan; (2) the defendant's acts or omissions constituted a breach of duty; and (3) the breach caused harm. *Pegram v. Herdrich*, 530 U.S. 211, 225-26 (2000). Defendants have not disputed that they are Plan fiduciaries, subject to the duties of prudence and loyalty, or that Braden has pled injury flowing from Defendants' breaches. *See, e.g.*, Appx. 107, 1088-1107. The dispositive issue, therefore, is whether the complaint properly alleges that Defendants' acts and omissions constitute breaches of fiduciary duty.

- 16 -

## A. ERISA Fiduciary Duties to Manage Plan Assets Prudently and Loyally Are Well Established.

ERISA requires retirement plan fiduciaries to discharge their duties to a plan prudently and loyally. The duty of prudence requires a fiduciary to act with such "care, skill, prudence, and diligence" as would a "prudent man acting in a like capacity and familiar with such matters." ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B). The closely related duty of loyalty requires that a fiduciary act "solely in the interest of the participants and beneficiaries" of a plan and for the "exclusive purpose" of providing benefits and paying expenses. ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A).

In the excessive-fee context, the duty of prudence has been described as

> "an objective standard, requiring the fiduciary to (1) employ proper methods to investigate, evaluate and structure the investment; (2) act in a manner as would others who have a capacity and familiarity with such matters; and (3) exercise independent judgment when making investment decisions." *Reich v. King*, 867 F. Supp. 341, 343 (D. Md. 1994). "Under this standard, a fiduciary is obligated to investigate all decisions that will affect the pension plan, and must act in the best interests of the beneficiaries." *Schaefer v. Arkansas Med. Soc'y*, 853 F.2d 1487, 1491 (8th Cir. 1988).

*Boeckman v. A.G. Edwards, Inc.*, No. 05-658, 2007 WL 4225740, at *3 (S.D. Ill. Aug. 31, 2007). Satisfaction of the duty of prudence depends on a fiduciary's process in making a decision, rather than on the result of the decision. *Roth v. Sawyer-Cleator Lumber Co.*, 16 F.3d 915, 917-18 (8th Cir. 1994) (noting that the question is "whether 'trustees, at the time they engaged in the challenged

- 17 -

transactions, employed the appropriate methods to investigate the merits of the investment and to structure the investment'" (citation omitted)); *accord, e.g.*, *In re Unisys Sav. Plan Litig.*, 74 F.3d 420, 434 (3d Cir. 1996); *Donovan v. Mazzola*, 716 F.2d 1226, 1232 (9th Cir. 1983).

Department of Labor guidance likewise states that fiduciaries must "establish[] an objective process . . . [that] should include an understanding of the fees and expenses [participants and beneficiaries] will pay," and "monitor investment returns and service provider performance and, if necessary, make changes." Employee Benefits Sec. Admin., U.S. Dep't of Labor, Understanding Retirement Plan Fees and Expenses 10-11 (May 2004), *available at* http://www.dol.gov/ebsa/pdf/undrstndgrtrmnt.pdf. It has urged fiduciaries to take seriously their duty to "prudently select and monitor plan investments, investment options made available to the plan's participants and beneficiaries, and the persons providing services to [the] plan." *Id.* at 2. Employers have "a specific obligation to consider the fees and expenses paid by [a] plan," and must "[e]stablish a prudent process for selecting investment alternatives and service providers" and "[m]onitor investment alternatives and service providers once selected to see that they continue to be appropriate choices." Employee Benefits Sec. Admin., U.S. Dep't of Labor, A Look at 401(k) Plan Fees 3 (Aug. 1998).

Appellate Case: 08-3798    Page: 28    Date Filed: 02/11/2009 Entry ID: 3516027

It is uncontroversial, therefore, that if fiduciaries unreasonably evaluate, select, and monitor a plan's investment options, or do so for any purpose other than the best interest of the plan, they have breached their fiduciary duties. A long list of district court decisions—in excessive-fee, prohibited-transaction, and disclosure cases factually analogous to Braden's—testifies to that fact,[4] and neither Defendants nor the court below disputed it. *See* Appx. 1211 (quoting *Roth*, 16 F.3d at 917-18). The question, rather, is whether Braden has successfully pled breaches of this kind. It is clear that he has.

---

[4] *See Shirk v. Fifth Third Bancorp*, No. 05-49, 2008 WL 4449024, at *9 (S.D. Ohio Sept. 26, 2008) (holding that complaint had stated a plausible claim where it alleged that plan charged excessive and unreasonable fees); *Tibble v. Edison Int'l*, No. 07-5359, slip op. at 17-19 (C.D. Cal. July 16, 2008) (allegations that sizable plan had agreed to pay "the same retail prices for investment management as the smallest investors," and that the funds charging higher fees "failed to outperform index funds over the long term," stated a plausible claim for breach of the duty of prudence), Appx. 1054-56; *id.* (use of plan assets to generate revenue that was "not captured for the benefit of the Plan and participants" violates the duty of loyalty); *Tussey v. ABB, Inc.* (*Tussey II*), No. 06-04305, 2008 WL 379666, at *5 (W.D. Mo. Feb. 11, 2008) (holding that complaint had stated a claim, since it was a "fair inference" from allegation that fiduciary charged fees "significantly in excess of rates paid by similar plans" that "a prudent investor would not behave in a similar manner"); *Taylor v. United Techs. Corp.*, No. 06-1494, 2007 WL 2302284, at *3 (D. Conn. Aug. 9, 2007) (allegations that fiduciaries had failed to "take steps to inform themselves," to "monitor the fees and expenses paid by the plan," and to "establish, implement, and follow procedures to properly and prudently determine whether the fees and expenses paid . . . were reasonable and incurred solely for the benefit of participants," each stated claims).

Appellate Case: 08-3798    Page: 29    Date Filed: 02/11/2009 Entry ID: 3516027

**B. Because Braden Alleges Sufficient Facts, the Excessive-Fee Claim Is Plausible.**

Braden has made out a plausible claim that Wal-Mart failed to prudently evaluate, select, and monitor Plan options. The complaint expressly alleges that Defendants failed "to implement a prudent and adequate procedure for evaluating, selecting and monitoring fund options and for ensuring that the reasonably priced, prudent investment options were selected for the Plan." Appx. 31, ¶ 65.[5] "An adequate or even cursory investigation by Defendants," the complaint states, "would have revealed to a reasonable fiduciary that" the mutual funds "were unduly expensive, and, thus, imprudent." Appx. 48, ¶ 96; *see also* Appx. 55-57, ¶¶ 116-21 (summarizing excessive-fee allegations).

Defendants argued and the district court concluded that this excessive fee allegation was "conclusory," but under governing law that is untrue. Just two Terms ago, the Supreme Court cited approvingly to Form 9, a model complaint for negligence included in the appendix to Title 28. Its allegation about negligence consists entirely of the following: "On June 1, 1936, in a public highway called Boylston Street in Boston, Massachusetts, defendant negligently drove a motor

---

[5] *See also* Appx. 44, ¶ 86 ("Defendants knew, or, had they properly discharged their fiduciary obligations, would have known that the Plan Investment Options were imprudent investments for the Plan because there are more reasonably priced, high-quality investment options available in the marketplace."); Appx. 44, ¶ 88 ("The Defendants failed to conduct an appropriate investigation into whether the Plan Investment Options were prudent investments . . . .").

- 20 -

vehicle against plaintiff who was then crossing said highway."  28 U.S.C. app. at 829 (cited by *Twombly*, 127 S. Ct. at 1970 n.10); *see also Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 513 n.4 (2002) (the "requirements" of Rule 8(a) "are exemplified by the Federal Rules of Civil Procedure Forms"; quoting with approval from Form 9).  Like Form 9, the complaint here alleges the setting in which the imprudence took place (the Plan), when (the class period), and who were harmed (Plan participants and beneficiaries).  *See generally* Appx. 55-57, ¶¶ 116-121.  Indeed, although Form 9 alleges the factual setting of the defendant's negligence, it does not specify the *way* in which the defendant was negligent.  In that respect, Braden exceeds Form 9's minimum standard, for he alleges the particular type of imprudence Defendants committed: imprudent selection and retention of excessively expensive mutual funds.  Under governing case law, the level of detail that the complaint provides here defeats any accusation that it is conclusory and legally insufficient.

While these allegations would be sufficient on their own, the complaint also includes a great many subsidiary facts to substantiate them.  A perusal of the subsidiary facts—and the reasonable inferences from those facts—demonstrates just how clearly Braden has met and exceeded the standards of Rules 8 and 12(b)(6).

Appellate Case: 08-3798     Page: 31     Date Filed: 02/11/2009 Entry ID: 3516027

The complaint begins its logic by alleging facts about what the Plan had the market power to do.  The Plan is very large.  Appx. 32, ¶ 67.  Large plans have significant bargaining power; they have the ability, for example, "to obtain Institutional Class shares" in mutual funds, which are "vastly cheaper" than the "Retail Class shares" available to normal investors.  Appx. 32, ¶ 67.  Thus, the Plan had the market power to secure the lowest rates available for its participants.

The complaint then alleges facts about the 401(k) market itself.  "The 401(k) marketplace," it avers, "is highly competitive," with many funds charging much lower rates than those selected by Defendants.  Appx. 31, ¶ 66.  Braden, far exceeding the minimal specificity required by Rule 8, then gives specific examples of comparable funds that charged lower rates.  Appx. 33-42, ¶¶ 71-79.

The complaint then puts two and two together.  If the Plan had the market power to select funds with low fees, and if the competitive 401(k) marketplace had many comparable funds available with much lower rates than the funds that the Plan offered, then the Plan fiduciaries *could* have selected funds with much lower rates.  But they did no such thing.  Instead, they selected mostly Retail Class shares, and not the much less expensive Institutional Class shares, in funds whose fees are unusually high even when compared to other funds' Retail Class shares.  Similarly, although the funds selected were predominantly actively managed— which tend to have higher fees than passively managed funds—the fees the Plan's

Appellate Case: 08-3798     Page: 32     Date Filed: 02/11/2009 Entry ID: 3516027

funds charged were high even by comparison to other actively managed funds. Appx. 32, 43, 46, ¶¶ 68, 82, 90-91. Moreover, seven of the funds they selected charged 12b-1 fees. These fees, which myriad comparable funds do not charge, pay for advertising in order to attract new customers rather than going to benefit fund investors. Appx. 32-33, ¶ 69-70. Thus, in comparison to the 401(k) marketplace, the funds Defendants offered to participants charged uncommonly expensive fees.

If the complaint had stopped there, the majority of the post-*Twombly* excessive fee cases would let the case proceed. *See Shirk v. Fifth Third Bancorp*, No. 05-049, 2008 WL 4449024, at *20-21 (S.D. Ohio Sept. 26, 2008) ; *Tibble v. Edison, Int'l*, No. 07-5339, slip op. at 17-23 (C.D. Cal. July 16, 2008), Appx. 1054-60; *Tussey v. ABB, Inc.* (*Tussey II*), No. 06-04305, 2008 WL 379666, at *5 (W.D. Mo. Feb. 11, 2008); *Taylor v. United Techs. Corp.*, No. 06-1494, 2007 WL 2302284, at *3 (D. Conn. Aug. 9, 2007). These cases recognize that abnormally high fees raise the reasonable inference that fiduciaries—who did or should have known the 401(k) marketplace better—acted imprudently. Had Defendants engaged in a prudent investigation and decision-making process, they would have offered the far less expensive funds that abound in the marketplace.

- 23 -

Of course, the complaint does not stop there. It proceeds to allege further facts "plausibly suggesting" that Defendants were imprudent. *Twombly*, 127 S. Ct. at 1966.

First, Braden alleges facts showing that the funds' performance could not justify their high fees, even though that was not strictly necessary. Justifying fees by performance is unduly risky, since "performance can change over night but excessive fees," as judged in comparison to the 401(k) marketplace, "will always be excessive." Appx. 43, ¶ 81. Nevertheless, Braden first alleges generally that the performance of the funds for the most part "fell short of far less expensive actively managed funds" and "in many instances" did not even "match the performance of the passively managed index they [were] designed to track." Appx. 43, ¶ 82. On top of this he alleges specifically that—as one example— comparable actively managed Vanguard funds outperformed the Plan's mutual fund options. Appx. 43-44, ¶¶ 83-84. Thus Braden's complaint alleges facts that eliminate one possible explanation for the funds' high fees, and so make imprudence *even more* plausible than it otherwise would be.

Braden was not content merely to eliminate alternative explanations, however. He alleges facts *affirmatively suggesting* that Defendants' reasons for selecting the funds were imprudent and disloyal. The complaint alleges that Defendants only selected mutual funds that paid Merrill Lynch, the Plan Trustee, a

- 24 -

portion of the fees that the funds charged the Plan.  Appx. 50-51, ¶ 103.  It further alleges that those revenue-sharing arrangements were made "*in exchange for*" the mutual funds' inclusion in the menu of Plan investment options.  Appx. 63, ¶ 140 (emphasis added).  Thus, Merrill Lynch's financial conflict of interest influenced the selection of investment options, and Defendants *knew* that this conflict existed, since they had expressly agreed to conceal it.  Appx. 50-51, ¶¶ 103-104.  Yet despite this knowledge, Defendants simply turned a blind eye to the imprudent decision-making process by which only funds that had agreed to pay kickbacks to Merrill Lynch were selected.  The complaint, then, suggests an entirely plausible explanation for the initial selection of funds—Merrill Lynch's self-interest and the Defendants' acquiescence thereto—that is contrary to a *lawful* explanation for Defendants' behavior.

Braden need not have direct evidence of the defects in the fiduciaries' process.  He alleges that Defendants had many choices and the heft to bargain in a competitive industry and that they chose more expensive mutual funds with no apparent benefit in exchange.  From this incongruous result, and from the suspicious fact that the funds chosen gave part of their fees to Merrill Lynch, the Plan Trustee, it is reasonable and entirely unspeculative to infer that the decision-making itself was flawed.

Appellate Case: 08-3798     Page: 35     Date Filed: 02/11/2009 Entry ID: 3516027

To reject these inferences would have startling consequences in other contexts. In actions under federal antidiscrimination laws, for example, a complaint that asserts a discriminatory decision-making process by alleging a disparate outcome will survive a Rule 12(b)(6) motion. *See, e.g.*, *Swierkiewicz*, 534 U.S. at 508-09 (Title VII and ADEA plaintiff alleged that he, a 53-year-old native of Hungary, was demoted by his employer's CEO, a French national, and replaced by another French national 32 years of age); *Boykin v. KeyCorp*, 521 F.3d 202, 214-15 (2d Cir. 2008) (African-American plaintiff alleged that she was denied a loan when similarly situated non-minority applicants were not). Analogous inferences are at work in this case. Braden asserts a flawed and imprudent decision-making process by pointing to the outcome of that process: the selection of mutual funds with much greater fees than many other, similarly situated funds. Appx. 31, ¶ 66. To be sure, he alleges much more than that—he also alleges facts that eliminate one reason for the outcome (the funds' performance) and suggest another (Merrill Lynch's self-interest). These additional allegations, though unnecessary to survive Defendants' motion, show how easily Braden surpasses the requirements of Rule 8. *Cf. Ware v. Nicklin Assocs., Inc.*, 580 F. Supp. 2d 158, 165 (D.D.C. 2008) (at pleading stage, plaintiff need not rebut defendant's asserted non-discriminatory reason for termination).

Appellate Case: 08-3798     Page: 36     Date Filed: 02/11/2009 Entry ID: 3516027

It is those allegations about the funds' sub-par performance and Merrill Lynch's self-interest that most strikingly distinguish Braden's Excessive-Fee Claim from the Sherman Act claim dismissed in *Twombly*. *See also supra* pp. 20-21 (pointing out other differences as well). Recall that the *Twombly* plaintiffs alleged only that the defendants had engaged in parallel conduct unfavorable to competition, and then asserted—as a legal conclusion—that they had *conspired* to act anticompetitively. 127 S. Ct. at 1962-63. The Court noted that the plaintiffs merely alleged that the defendants—Baby Bells or their successors—had each tried to keep newer entrants out of their regional markets in defiance of the "network sharing" mandate of the Telecommunications Act of 1996—but that the Baby Bells had every incentive to exclude competitors anyway in order to preserve their hold on the regional markets. *Id.* at 1971. Yet if "alleging parallel decisions to resist competition were enough," then pleading an antitrust conspiracy against the companies in any industry "would be a sure thing." *Id.* What is more, the *Twombly* complaint actually "itself [gave] reasons to believe" that the Baby Bells had *not* conspired amongst themselves to stay out of each others' regional markets. *Id.* at 1972. The complaint, the Court noted, was "replete with indications" that any prospective entrant "faced nearly insurmountable barriers to profitability owing to the [Baby Bells'] flagrant resistance to the network sharing requirements of the 1996 Act," indicating that the Baby Bells had a good reason not to try to

Appellate Case: 08-3798     Page: 37     Date Filed: 02/11/2009 Entry ID: 3516027

enter each others' markets: they knew they would be resisted at every turn. *Id.* at 1973.

Here, of course, there is simply no obvious or "natural" reason—such as the normal economic incentives of the marketplace—that would explain why Defendants have selected mutual funds with abnormally high fees. *Cf. id.* at 1971. That in itself is enough to take this case out of the realm of *Twombly*. More than that, though, Braden alleges *further* facts plausibly eliminating one possible explanation and plausibly suggesting another—and unlike the *Twombly* plaintiffs, certainly alleges no facts contradicting his claims. The complaint shows that the funds' performance relative to comparable competitors cannot explain why the funds were selected, and demonstrates that Plan Trustee Merrill Lynch, who shared in the high fees the funds charged, had an economic incentive to ensure that the funds were selected and retained.[6] In contrast to *Twombly*, then, the Excessive-Fee Claim alleges facts that are much more than just *consistent* with imprudence; they affirmatively and strongly *suggest* it.

Eighth Circuit cases following *Twombly* also indicate that dismissal of the Excessive-Fee Claim was inappropriate. Of this Court's recent published opinions affirming 12(b)(6) dismissals, three cases featured plaintiffs who had simply not alleged facts to support all the necessary elements of their claims. *Cf. Benton v.*

---

[6] That Defendants *agreed* to keep this information secret also shows that they knew of it and tried to keep it hidden.

Appellate Case: 08-3798     Page: 38     Date Filed: 02/11/2009 Entry ID: 3516027

*Merrill Lynch & Co.*, 524 F.3d 866, 870-71 (8th Cir. 2008) (failure to plead necessary elements of securities fraud and common law fraud; alleging facts inconsistent with relief requested); *Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549-54 (8th Cir. 2008), *cert. denied*, 129 S. Ct. 222 (2008) (in a securities fraud action, failure to plead the essential element of loss causation); *Eckert v. Titan Tire Corp.*, 514 F.3d 801, 806-07 (8th Cir. 2008) (plaintiff "failed to do anything indicating [an] intent to pursue a claim based on ERISA beyond merely citing the jurisdictional provision of the statute").  Here, it is uncontested that Braden has properly pled both Defendants' fiduciary status and the injury resulting from their alleged breaches of duty.  *See supra* p. 16.  And for the reasons already explained, Braden has also properly pled that Defendants' evaluation, selection, and retention of mutual funds with excessive fees constituted breaches of fiduciary duty.  No element of the Claim is absent.  *See Pegram*, 530 U.S. at 225-26.

Braden, furthermore, alleges no facts that make the Excessive-Fee Claim impossible or implausible.  *Cf. Benton*, 524 F.3d at 871 (claim for aiding and abetting fraud impossible due to the timing of events alleged in the complaint itself).  Rather, by alleging that the funds underperformed and Defendants turned a blind eye to Merrill Lynch's financial incentives, he alleges facts affirmatively suggesting imprudence and disloyalty.

- 29 -

Finally, unlike the plaintiffs in *Saunders v. Farmers Insurance Exchange*, 537 F.3d 961 (8th Cir. 2008), Braden has not waived a claim at the appellate level by failing to argue it to the district court.  *Cf. id.* at 964-65 (plaintiffs had not pressed their intentional discrimination argument below, and had only included the words "intentional and/or unintentional" in a well pled disparate impact claim).  Braden fully briefed his Excessive-Fee Claim in the district court.  Appx. 987-94.

### C. In Dismissing the Excessive-Fee Claim, the District Court Erred by Drawing Inferences in Defendants' Favor and Requiring Braden to Negate Them.

Although Braden's Excessive-Fee Claim complies with governing case law and exceeds the requirements of Rule 8, the district court dismissed it.  Instead of making all reasonable inferences in his favor, the district court drew inferences in Defendants' favor and then required Braden to eliminate those possibilities.  This was error.

In dismissing Braden's Excessive-Fee Claim, the district court said that the Claim was "conclusory" because Defendants "could have chosen funds with higher fees for any number of reasons, including potential for higher return, lower financial risk, more services offered, or greater management flexibility."  Appx. 1211-12.  Requiring Braden to eliminate those possibilities, however, seriously distorts the law.  In order to allege facts showing plausible grounds for relief, a plaintiff need not eliminate other conceivable possibilities that are logically

- 30 -

consistent with the facts a complaint alleges.  For if a plaintiff were required to do so, then there *would* be "a probability requirement at the pleading stage," which is precisely what the Supreme Court has foreclosed.  *Twombly*, 127 S. Ct. at 1965; *see also Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

Allowing Braden's well pled complaint to proceed will not prevent Defendants from showing that the "potential for higher return, lower financial risk, more services offered, or greater management flexibility" drove their selection of the funds.  Appx. 1211-12.  They will have the chance to support these factual inferences with evidence currently in their control but inaccessible to Braden without discovery.  *See Anderson v. Resolution Trust Co.*, 66 F.3d 956, 961 (8th Cir. 1995) (remanding ERISA breach of fiduciary duty claims to district court, because they present a "fact-intensive issue"); *see also Roth*, 16 F.3d at 919.  At this stage, though, the district court cannot draw inferences in favor of Defendants and then expect Braden to negate them without any discovery.  Because the district court dismissed the complaint on the strength of the inferences it drew in favor of Defendants, its order should be reversed.

> **D.  Dismissing the Excessive-Fee Claim Would Jeopardize Both Notice Pleading and ERISA's Protections Against Excessive Fees.**

The consequences of upholding the district court's dismissal of the Excessive-Fee Claim would be wide-ranging and serious, both procedurally and

- 31 -

substantively.  Procedurally, it would announce a brand-new standard for evaluating complaints.  A complaint that gave the defendant fair notice of the plaintiff's claim and alleged facts providing plausible grounds for relief would no longer be enough.  *Cf. Twombly*, 127 S. Ct. at 1964-65.  It would have to allege facts to which plaintiffs rarely have access before discovery.  And *that*, in turn, would mean that entirely meritorious ERISA claims would not make it through the courthouse door unless defendants volunteered pre-discovery information from ERISA fiduciary files—information explaining precisely how and why defendants chose to act imprudently.  Success would depend on the fortuity of a confessional defendant.

Notice pleading is alive and well.  Two weeks after it decided *Twombly*, the case on which Defendants relied so heavily before the district court, the Supreme Court disposed of any notion that *Twombly* had judicially amended Rule 8. *Erickson v. Pardus*, 551 U.S. 89, —, 127 S. Ct. 2197, 2200 (2007) (reiterating that plaintiffs are required only to provide "a short and plain statement of the claim showing that [they are] entitled to relief" and that "[s]pecific facts are not necessary").  Moreover, in explaining what it meant by "plausibility," the *Twombly* Court affirmed the continuing validity of both *Swierkiewicz*, which had rejected a judicially imposed heightened pleading standard, 127 S. Ct. at 1973-74, and the Federal Rules of Civil Procedure Forms, which are notable for their "simplicity

Appellate Case: 08-3798     Page: 42     Date Filed: 02/11/2009 Entry ID: 3516027

and brevity," Fed. R. Civ. P. 84. *See Twombly*, 127 S. Ct. at 1970 n.10, 1973 n.14. The Excessive-Fee Claim easily satisfies *Twombly*'s requirements. *See also supra* Part II.B.

Requiring Braden to know *at this stage* the precise manner in which Defendants imprudently evaluated, selected and monitored the funds the Plan offered, or to eliminate all alternate explanations for Defendants' behavior but imprudence and disloyalty, would violate the *Twombly* and *Erickson* standard. The cases do not require a plaintiff to come into court already possessing the evidence that he will use to prove his case. *See Twombly*, 127 S. Ct. at 1969 n.8 (reaffirming that "a district court weighing a motion to dismiss asks 'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims'" (quoting *Scheuer*, 416 U.S. at 236)). They merely demand that the facts alleged in a complaint be more than just logically "consistent with" the elements of a claim. *Id.* at 1966. Here, of course, Braden's complaint strongly and affirmatively "suggest[s]" imprudence and disloyalty, 127 S. Ct. at 1966, by explaining (1) that the funds the Plan offered were markedly more expensive than other, comparable funds on the market; (2) that their expense is not justified by superior performance—to the extent such performance is even relevant, *see* Appx. 42-43, ¶ 81; and (3) that Merrill Lynch, the Plan Trustee, received kickbacks from all the funds the Defendants selected. *See supra* Part II.B.

- 33 -

Appellate Case: 08-3798    Page: 43    Date Filed: 02/11/2009 Entry ID: 3516027

The district court, however, turned *Twombly* on its head. Instead of just asking that Braden allege facts that were more than merely consistent with imprudence and disloyalty, which Braden did, the district court required allegations that could be consistent *only* with imprudence and disloyalty. Thus, the Excessive-Fee Claim was dismissed because Defendants might be able to show that they acted prudently and loyally—that is, because they might have defenses. Whatever else *Twombly* means, it does not mean that.

Just as this Court cannot simultaneously uphold notice pleading and the district court's dismissal, so it cannot simultaneously affirm ERISA's strict fiduciary duties and the judgment below. Defendants would require that Braden have direct knowledge of precisely what went wrong in Defendants' evaluation, selection, and monitoring of investment options. Such a result, however, threatens to foreclose recovery in *any* case where a plan participant alleges excessive fees. It is hard to imagine the 401(k) plan participant who is privy to the meetings or internal decision-making of his employer's management, board of directors, or board committees.[7] For that reason, plan participants—like Braden here—will rarely (if ever) have access to *specific* facts detailing the decision-making processes of fiduciaries. That is especially true in this case, where Wal-Mart

_____

[7] An administrator has no duty to disclose internal deliberations such as committee minutes. *Brown v. Am. Life Holdings, Inc.*, 190 F.3d 856, 862 (8th Cir. 1999).

Appellate Case: 08-3798    Page: 44    Date Filed: 02/11/2009 Entry ID: 3516027

contracted to keep Braden and other participants in the dark about the revenue sharing between the Plan funds and Merrill Lynch.

More generally, ERISA plaintiffs frequently cannot allege the facts underlying fiduciary misconduct with particularity because "[w]here a fiduciary exercises discretionary control over a plan, and assumes the responsibilities that this control entails, the victim of his misconduct often will not, at the time he files his complaint, be in a position to describe with particularity the events constituting the alleged misconduct." *Concha v. London*, 62 F.3d 1493, 1503 (9th Cir. 1995) (rejecting application of Rule 9(b) to ERISA claims). Rather, due to this asymmetry of information, the details and "facts will frequently be in the exclusive possession of the breaching fiduciary." *Id.*[8]

In short, a plaintiff who claims that fiduciaries improperly selected and retained funds with excessive fees, and has in fact experienced Plan losses as a result of this breach, will rarely have direct evidence of the unreasonable decisions that were made by the fiduciaries who caused the losses. Plaintiffs with the strongest cases, like Braden, will identify the specific funds that charged excessive

---

[8] *See also Shirk*, 2008 WL 4449024, at *7 (finding heightened pleading not applicable to excessive-fee claims); *Tussey II*, 2008 WL 379666, at *9 (*Twombly* "reaffirmed the concept of notice pleading with discovery being used to develop a factual record"); *United Techs.*, 2007 WL 2302284, at *3 (although "plaintiffs' allegations [did] not present a detailed description of how defendants breached their fiduciary duty" the complaint was found sufficient because "specific facts are not necessary" and "a complaint must be drafted without the benefit of discovery").

Appellate Case: 08-3798     Page: 45     Date Filed: 02/11/2009 Entry ID: 3516027

fees, and show, by reference to the 401(k) marketplace, that the fees were indeed excessive. The truly unusual plaintiff will eliminate certain explanations for the fiduciaries' behavior, such as the funds' performance, and allege facts affirmatively suggesting that it is not prudence or loyalty, but self-interest—here, Merrill Lynch's self-interest—that explains the high fees. And of course, that is precisely what Braden has done here.

Braden carefully pled his complaint by stating his claims and supporting them with detailed factual allegations, reasonable inferences drawn from the allegations, and analysis of the facts and circumstances that prompted and justified his claims. His complaint is significantly more detailed and developed than many others that were upheld by other courts in this Circuit and beyond. *See supra* p. 19 n.4. As such, the district court's opinion is out of step with the weight of authority and the reality of the complaint. If this complaint were not sufficient, the ability of plan participants to protect their retirement savings from misuse or mismanagement would be jeopardized. Yet such protection is precisely what Congress had in mind when it passed ERISA. *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 141 n.8 (1985) ("[T]he crucible of congressional concern was misuse and mismanagement of plan assets by plan administrators . . . ."). Under controlling notice pleading standards, the district court erred in dismissing the Excessive-Fee Claim.

Appellate Case: 08-3798    Page: 46    Date Filed: 02/11/2009 Entry ID: 3516027

### III. Braden Alleges Facts That, If True, Provide Plausible Grounds for Relief Under the Prohibited-Transaction Claim.

Braden's Prohibited-Transaction Claim alleges that Plan assets invested in the mutual funds the Plan offered were funneled to Merrill Lynch, the Plan Trustee, in the form of revenue-sharing payments and hidden kickbacks. This is forbidden by ERISA's "prohibited transaction" provision, ERISA § 406(a), 29 U.S.C. § 1106(a), which prohibits a fiduciary from causing a plan to enter into certain transactions with "parties in interest"—entities that are too close to a plan for the transactions to be assumed to be arm's length. *See Rutledge v. Seyfarth, Shaw, Fairweather & Geraldson*, 201 F.3d 1212, 1222 (9th Cir. 2000), *amended by* 208 F.3d 1170 (9th Cir. 2000) ("The prohibited transactions provision . . . protect[s] a plan's participants and beneficiaries from a depletion of plan assets through shady, inside deals . . . ."); *see also Lockheed Corp. v. Spink*, 517 U.S. 882, 888 (1996). As the Plan's Trustee, Merrill Lynch was a "party in interest." *See* ERISA § 3(14), 29 U.S.C. § 1002(14).

ERISA's prohibited-transaction provision doubly forbids the Plan's deal with Merrill Lynch. ERISA prohibits fiduciaries from causing a plan to engage in a transaction with a party in interest whereby the party in interest or plan furnishes the other with "goods, services, or facilities," ERISA § 406(a)(1)(C), 29 U.S.C. § 1106(a)(1)(C), unless the compensation for the goods, services or facilities is "no more than reasonable," ERISA § 408(b)(2), 29 U.S.C. § 1108(b)(2). Here, the

- 37 -

"revenue-sharing" arrangement with Merrill Lynch was assuredly not "reasonable" compensation, and hence was a prohibited transaction. ERISA also prohibits fiduciaries from having the plan "transfer to" any party in interest, any "assets of the plan." ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D). Because the "revenue" shared with Merrill Lynch was taken out of Plan assets invested in the funds, Defendants broke this rule as well.

### A. Braden Alleges Facts That, If True, Plausibly Suggest That Defendants Caused the Plan to Pay Unreasonable Compensation to Merrill Lynch.

Braden alleges that Defendants entered into secretive arrangements with Merrill Lynch under which Merrill received a portion of the fees that each of the Plan's mutual funds charged to the Plan, and that the fees were kickbacks instead of payments for actual services performed. *See* Appx. 68, ¶ 161 (revenue-sharing payments were merely kickbacks given in exchange for the funds' inclusion in the menu of options made available to Plan participants); Appx. 50-51, ¶¶ 103-104 (describing Trust Agreement that concealed amounts and nature of purported services provided by Merrill to Plan).

By alleging that Merrill was paid by the Plan to perform minimal or no services, and was paid money for nothing or almost nothing, the complaint alleges that Defendants caused the Plan to pay for services it did not receive. The kickbacks alleged by the complaint thus constitute a prohibited transaction; using

Appellate Case: 08-3798   Page: 48   Date Filed: 02/11/2009 Entry ID: 3516027

any Plan assets to pay for zero services, or overpaying for minimal services, is unreasonable. *See, e.g.*, *Reich v. Lancaster*, 55 F.3d 1034, 1051 (5th Cir. 1995) (compensation unreasonable because it was excessive in comparison to market).

Braden's is a fleshed-out claim, and more than sufficient under Rule 8. Instead of legal "labels and conclusions," *Twombly*, 127 S. Ct. at 1965, Braden describes the form of the transaction ("compensation" to Merrill Lynch in the form of "revenue sharing" with the mutual fund companies) and how it was prohibited (the compensation was given in exchange for few or no services). Appx. 50-51, 67-70, ¶¶ 103, 161-162, 164; *see also Twombly*, 127 S. Ct. at 1970 n.10; *Swierkiewicz*, 534 U.S. at 513 n.4. Requiring more detail than this is contrary to the case law and would be especially perverse here. Braden lacks fine-grained details about the prohibited transaction precisely because Wal-Mart and Merrill Lynch contracted to keep those details secret. Appx. 50-51, ¶ 103. The facts that Braden has already alleged, though—such as the funds' kickbacks to Merrill Lynch in exchange for little or no services, an odd agreement to keep the revenue sharing secret, and abnormally high mutual fund fees charged for no good reason—raise a "reasonably founded hope" that discovery "will reveal [further] relevant evidence." *Twombly*, 127 S. Ct. at 1967 (citation and internal quotation omitted). Thus it was error to dismiss the Claim.

- 39 -

### B. Braden Alleges Facts That, If True, Plausibly Suggest That Defendants Caused the Plan to Transfer Its Assets to Merrill Lynch.

Braden also properly alleges that the "revenue-sharing" arrangement unlawfully transferred Plan assets to Merrill Lynch, a party in interest under ERISA. The fees that the funds shared with Merrill Lynch were, after all, assets of the Plan.[9]

As the court in *Haddock v. Nationwide Financial Services Inc.*, 419 F. Supp. 2d 156 (D. Conn. 2006), noted, drawing on case law from the Second, Fifth, and Ninth Circuits, revenue-sharing payments count as plan assets (1) if they are received as a result of the payee's fiduciary status or function, and (2) if they are paid out at the expense of plan participants or beneficiaries. *Id.* at 170. This limited, functional definition of plan assets is consistent with this Court's ruling on the issue. *Compare Kalda v. Sioux Valley Physician Partners, Inc.*, 481 F.3d 639, 648 (8th Cir. 2007) (rejecting argument that, because assets could potentially be used to fund a plan, the assets belonged to the plan), *with Haddock*, 419 F. Supp. 2d at 170 (same).

---

[9] The transfer of plan assets to a party-in-interest is allowed if the transfer constitutes "reasonable compensation" in exchange for services. ERISA § 408(b)(2), 29 U.S.C. § 1108(b)(2). As Braden has just pointed out, though, the revenue-sharing arrangement with Merrill Lynch was neither reasonable nor—in any meaningful sense—compensation. *See supra* Part III.A.

Appellate Case: 08-3798     Page: 50     Date Filed: 02/11/2009 Entry ID: 3516027

Both of the *Haddock* conditions are satisfied here. Merrill Lynch receives the revenue-sharing payments because of its status as Trustee. *See* Appx. 67-68, ¶ 161 (payments were "kickbacks for inclusion of the [mutual funds] in the menu of funds made available to Plan participants"). Moreover, it receives those payments at the expense of Plan participants and beneficiaries. The complaint alleges that the Plan, and ultimately the Plan's participants and beneficiaries, bear the expense of the revenue-sharing arrangement. Because "the cost" of that arrangement "is passed through to the Plan by way of increased fees and expenses charged to the Plan," not to mention dramatically lower returns, Plan assets are "charge[d] more than they normally or otherwise would in the absence of revenue sharing." Appx. 68, ¶ 162. Under *Haddock*, these allegations are sufficient. *See* 419 F. Supp. 2d at 170; *see also Shirk v. Fifth Third Bancorp*, No. 05-049, 2008 WL 4449024, at *15-17 (S.D. Ohio Sept. 26, 2008); *Tibble v. Edison Int'l*, No. 07-5359, slip op. at 27 (C.D. Cal. July 16, 2008), Appx. 1064.

Defendants have disputed that the revenue-sharing payments were made out of Plan assets, but if Braden's allegations are taken as true, as they must be, he has successfully stated a claim. Discovery will allow Defendants to support their argument with the necessary evidence. *See Phones Plus, Inc. v. Hartford Fin. Servs. Group, Inc.*, No. 06-1835, 2007 WL 3124733, at *5 (D. Conn. Oct. 23, 2007). The district court erred in dismissing this Claim.

Appellate Case: 08-3798     Page: 51     Date Filed: 02/11/2009 Entry ID: 3516027

**C. In Dismissing Braden's Prohibited-Transaction Claim, the District Court Erred by Misreading the Complaint and Drawing Inferences in Favor of Defendants That Plaintiff Was Then Required to Negate.**

The district court dismissed Braden's Prohibited-Transaction Claim for three reasons. First, the court found that Plaintiff "made no showing [that] the revenue sharing fees were unreasonable in relation to the services provided." Appx. 1214. As discussed above, *see supra* Part III.A, Braden did plausibly allege unreasonableness; he has alleged that Merrill Lynch received kickbacks in exchange for little or no services provided. More detail than this he *cannot* provide, since the Trust Agreement has contractually shut him out from the opportunity to know more.

The second reason the district court gave for dismissing the Prohibited-Transaction Claim is because "the Complaint is void of any factual allegation that Merrill Lynch received kickbacks from the [mutual funds]." Here the district court simply misread the complaint, which is replete with allegations that Merrill received kickbacks from the funds' management. *See, e.g.*, Appx. 15, 50-51, 67-70, ¶¶ 10, 103-04, 160-64. Perhaps the district court doubted the allegation, but that provided no reason to discount it. *See Twombly*, 127 S. Ct. at 1965 ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations." (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989))). Braden cannot allege the specific amount of the kickbacks because

- 42 -

Defendants and Merrill Lynch have agreed to hide the amounts, but such "heightened fact pleading of specifics" is not required. *Id.* at 1974.

Third, in dismissing Braden's Prohibited-Transaction Claim, the district court reversed the *Twombly* plausibility standard, giving the benefit of the doubt to Defendants instead of Braden and stating: "Defendant could have chosen the more expensive plans for a variety of legitimate and sound reasons." Appx. 1214; *cf. Shirk*, 2008 WL 4449024, at *10 ("This Court cannot grant Defendants' motion to dismiss simply because Defendants deny the allegations in the second amended complaint and offer plausible grounds on which to discount the allegations."). Drawing inferences in favor of Defendants and then requiring Braden to eliminate them as possibilities is legally improper on a 12(b)(6) motion. *See supra* Part II.C. Thus, the district court erred in dismissing Braden's Prohibited-Transaction Claim.

## IV. Braden Alleges Facts That, If True, Provide Plausible Grounds for Relief Under the Disclosure Claim.

### A. ERISA Fiduciaries Must Disclose All Material Information That Could Adversely Affect Participants' Interests, Which May Include Information About Fees and Revenue Sharing.

ERISA requires fiduciaries to "discharge . . . duties with respect to a plan solely in the interest of the participants and beneficiaries." ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1). This Court and many others recognize that this duty—the duty of loyalty—requires ERISA fiduciaries to disclose material plan information when that information could adversely affect a plan member's interests. *See, e.g.*,

- 43 -

*Kalda v. Sioux Valley Physician Partners, Inc.*, 481 F.3d 639, 644 (8th Cir. 2007).

The duty to disclose encompasses the obligation not to deceive, as well as the

fiduciary's affirmative obligation "to speak out if it knows that silence might be

harmful." *Shea v. Esensten*, 107 F.3d 625, 628-29 (8th Cir. 1997) (reversing

district court and holding that ERISA plaintiff had stated claim for breach of

fiduciary duty where defendant concealed a financial incentive scheme); *see also*

*Howe v. Varity Corp.*, 36 F.3d 746, 753-54 (8th Cir. 1994) (noting that a fiduciary

"can also have . . . 'a duty . . . to advise [a beneficiary] of circumstances that

threaten interests relevant to the relationship'" and that "a fiduciary is under a duty

to communicate material facts to a plan beneficiary" (citation omitted)), *aff'd*, 516

U.S. 489 (1996).

Moreover, as courts have recognized and the Department of Labor has made

clear, satisfying ERISA's enumerated disclosure and reporting requirements, *see*

ERISA §§ 101-111, 29 U.S.C. §§ 1021-1031, does not exhaust the more general

fiduciary duty to disclose material information. *See, e.g.*, *Shea*, 107 F.3d at 628; *In*

*re Unisys Corp. Retiree Med. Benefit ERISA Litig.*, 57 F.3d 1255, 1264 (3d Cir.

1995); Amended Brief of Secretary of Labor as Amicus Curiae Supporting

Plaintiffs-Appellants at 19-20, *Hecker v. Deere & Co.*, Nos. 07-3605, 08-1224 (7th

Cir. Apr. 2, 2008), *available at* www.dol.gov/sol/media/briefs/Deere(A)-04-02-

2008.pdf ("DOL *Deere* Amicus").

Appellate Case: 08-3798    Page: 54    Date Filed: 02/11/2009 Entry ID: 3516027

Thus, the duty to disclose can extend both to fees and to revenue-sharing arrangements if failing to disclose them would be materially misleading. *Shirk*, 2008 WL 4449024, at \*11 (complaint alleging failure to disclose fees stated a claim); *Tibble v. Edison Int'l*, No. 07-5359, slip op. at 28-31 (C.D. Cal. July 16, 2008) (denying motion to dismiss plaintiffs' claims alleging nondisclosure of certain information regarding revenue-sharing payments), Appx. 1065-68; *Taylor v. United Techs. Corp.*, No. 06-1494, 2007 WL 2302284, at \*5 (D. Conn. Aug. 9, 2007) (failure to disclose revenue sharing can constitute a material misrepresentation actionable under ERISA). The Department of Labor agrees that, in certain circumstances, failure to disclose revenue-sharing arrangements may violate the duty to disclose, DOL *Deere* Amicus at 20-21, a persuasive position that is entitled to deference, *see Ball v. Memphis Bar-B-Q Co.*, 228 F.3d 360, 365 (4th Cir. 2000); *Anweiler v. Am. Elec. Power Serv. Corp.*, 3 F.3d 986, 993 (7th Cir. 1993).

### B. Because Braden Alleges Sufficient Facts, the Disclosure Claim Is Plausible.

Braden's Disclosure Claim charges that Defendants failed to properly disclose material information about (1) the excessive fees that the Plan funds charged and (2) the revenue-sharing arrangement's effect on Plan fiduciaries' mutual fund selection. These allegations are legally and factually separate, and Braden will discuss them separately.

- 45 -

### 1. Fees.

Braden alleges that Defendants "failed to provide complete and accurate information to Plan participants" about several crucial features and effects of the excessive fees. Appx. 49-50, ¶¶ 101-102. They did not tell participants about the prodigious impact that the excessive fees have on their retirement savings over time. Appx. 49-50, ¶¶ 101-102; *see also supra* pp. 9-10. Nor did they inform participants that the Plan had access to comparable, much less expensive and better-performing funds. Appx. 50, 62-63, ¶¶ 102, 139.

The district court ruled that the complaint, which alleged these nondisclosures, had not stated a claim. It dismissed the claim on these grounds: "[The] comparisons [with comparable funds] do not show Wal-Mart and the RPC did not disclose material information that could be harmful to participants. On the contrary, participants were free to make their own comparisons, to determine whether the fees were unreasonable, and to choose other options outside the Plan." Appx. 1213.

To the extent that the district court was suggesting that fiduciaries need not disclose information that is available to participants through other channels, it erred. The terms of plan documents, for example, are available to participants, and yet all courts agree that failing to fully and accurately disclose information to participants about the terms of a plan is a breach of duty. *See Kalda*, 481 F.3d at

- 46 -

644; *see also, e.g.*, *Devlin v. Empire Blue Cross & Blue Shield*, 274 F.3d 76, 88-89 (2d Cir. 2001); *In re Unisys Corp.*, 57 F.3d at 1264.  As the Third Circuit has noted, whether an employee is ultimately able to discover the undisclosed information is irrelevant.  The materiality of undisclosed information "does not depend" on whether an employee "discovers the misrepresentations," indeed even if he discovers them before he can act on them.  *Pell v. E.I. DuPont de Nemours & Co.*, 539 F.3d 292, 300 (3d Cir. 2008).  Rather, the test for materiality in the context of a 401(k) plan is whether there is a substantial likelihood that the nondisclosure would mislead a reasonable employee in the process of making an adequately informed decision regarding investment choices.  *See Kalda*, 481 F.3d at 644 (applying test in the context of a medical benefits plan, where the participant's decision is about "benefits to which she might be entitled" (citation and internal quotation omitted)); *see also, e.g.*, *In re Sprint Corp. ERISA Litig.*, 388 F. Supp. 2d 1207, 1228 (D. Kan. 2004) (applying test in 401(k) context).[10]

Whether undisclosed information is material under this test is a highly fact-intensive inquiry, and not susceptible to determination on the pleadings.  *Ballone v. Eastman Kodak Co.*, 109 F.3d 117, 125 (2d Cir. 1997) (materiality "is fact-specific

---

[10] The district court also asserted in passing that Braden was trying to "transfer [his] burden to show a breach of fiduciary duty by requiring [Defendants] to *justify* the minutiae of their investment decisions."  Appx. 1213 (emphasis added). To *inform*, however, is not to justify.  Braden bases his claim not on Defendants' failure to give reasons but on their failure to disclose material facts.

- 47 -

and will turn on a number of factors"); *In re Unisys Sav. Plan Litig.*, 74 F.3d 420, 443 (3d Cir. 1996) (materiality a "question[] of fact" that the court would leave for determination at trial); *In re AEP ERISA Litig.*, 327 F. Supp. 2d 812, 832 (S.D. Ohio 2004). For that reason alone it was error for the district court to dismiss this Claim on the pleadings.

The district court, moreover, concluded that "participants were free to make their own comparisons, to determine whether fees were unreasonable, and to choose other options outside the Plan." Appx. 1213. As Braden has just noted, the legal relevance of these conclusions is highly doubtful. The conclusions are improper for another reason besides: they constitute factual inferences, drawn in favor of Defendants, which the district court faulted Braden for not having negated. *See, e.g.*, *Neighborhood Enters., Inc. v. City of St. Louis*, 540 F.3d 882, 884-85 (8th Cir. 2008) (on Rule 12(b)(6) motion, reasonable inferences to be made in *plaintiff's* favor).

The proper inference to be drawn from the facts Braden alleges is that sufficient information to make investment decisions was *not* available to Plan participants. As a mere matter of common sense, if a participant does not know of the existence of accessible, comparable, less expensive investment options—in other words, if he does not know the state of the 401(k) market, something which Defendants, for their part, were duty-bound by ERISA to know—then the decision

- 48 -

he makes is necessarily ill-informed. *See Kalda*, 481 F.3d at 644. If a participant knows that excessive fees will dramatically reduce medium- and long-term returns, he will be much more likely to invest his salary through other retirement vehicles, such as an IRA, in which far less expensive (and better performing) investment options are available. The district court was therefore wrong to rule that Braden had failed to state a claim for nondisclosure of material information about the Plan's fees.

### 2. Revenue Sharing.

Braden also alleges that Wal-Mart "agreed to conceal from its employees and Plan participants the amount of revenue sharing and other kickbacks paid to Merrill Lynch by the mutual fund companies." Appx. 50-51, ¶ 103. The district court, relying in part on what it considered to be the Department of Labor's position, dismissed this part of the Disclosure Claim because it concluded that there is no duty to disclose revenue-sharing agreements. Appx. 1213.

To understand the narrow question with which this Court is faced and to forestall any strawman arguments, it is essential to understand what Braden is *not* arguing. He does not argue that failure to disclose revenue sharing is a *per se* violation of the duty to disclose. *Cf.* DOL *Deere* Amicus at 20-21. Rather, Braden argues that failure to disclose revenue sharing in certain circumstances *can* be a violation of the duty to disclose, a position with which the Department of Labor

- 49 -

agrees, *see id.*, and that the allegations in the complaint, seen in the light most

favorable to him—as they must be—give rise to such a duty.

Braden alleges that the investment advisers who ran the mutual funds at

issue here entered into revenue-sharing agreements with Merrill Lynch "in

exchange for [their] being included in the line-up of funds offered to Plan

participants." Appx. 63, ¶ 140. Braden is alleging that the funds were offered to

Plan participants, then, not "for the exclusive purpose" of "providing benefits to

participants and their beneficiaries" and of "defraying reasonable expenses of

administering the plan," but were offered because of Merrill's self-interested

motives—a direct violation of the duty of loyalty. ERISA § 404(a)(1)(A), 29

U.S.C. § 1104(a)(1)(A). Needless to say, that investment options are offered not

for their status as prudent investments, but rather because of a plan trustee's self-

interest, is relevant to a participant's informed decision-making. *Shea*, 107 F.3d at

628-29 (requiring disclosure of financial conflicts of interest). Braden's claim that

the revenue sharing that occurred *in this case* should have been disclosed rests on

indisputable legal foundations, among them the duty to speak truthfully and

provide critical information. Thus, it was error for the district court to dismiss the

Disclosure Claim.

Appellate Case: 08-3798   Page: 60   Date Filed: 02/11/2009 Entry ID: 3516027

## V.    Braden Successfully Alleges Derivative ERISA Claims.

### A.    Braden Alleges Facts That, If True, Provide Plausible Grounds for His Monitoring Claim.

A fiduciary's power to appoint other fiduciaries encompasses an ongoing duty to monitor those appointees, and not merely to remove them after mischief comes to light.  *See, e.g.*, *Martin v. Feilen*, 965 F.2d 660, 669-70 (8th Cir. 1992) ("Depending upon the circumstances, the director's duty to monitor the actions of appointed trustees may impose a duty to prevent wrongful conduct."); *In re Westar Energy, Inc., ERISA Litig.*, No. 03-4032, 2005 WL 2403832, at *24 (D. Kan. Sept. 29, 2005)  ("The Fourth, Fifth, Seventh, Eighth, and Ninth Circuits have found that the power to appoint, retain or remove encompasses a duty to monitor.")  Without an ongoing duty to monitor appointees, the obligation becomes a closed-eye, meaningless exercise.

The Defendants with monitoring responsibilities thus had an obligation to ensure that their appointees were faithfully discharging their delegated duties of investment evaluation and monitoring, asset management, and disclosure.  As former Secretary of Labor Chao has explained, "designating another person or entity to manage a plan *does not* relieve [the appointing fiduciary] of responsibility or liability."  Elaine L. Chao, U.S. Sec'y of Labor, *Get It Right: Responsibilities of an ERISA Fiduciary* (May 28, 2004), *available at* http://www.dol.gov/_sec/media/speeches/20040528_Yale.htm.  The appointing

Appellate Case: 08-3798     Page: 61     Date Filed: 02/11/2009 Entry ID: 3516027

fiduciary retains "a responsibility to *monitor* the performance of the fiduciary," which includes "reading . . . reports, holding regular meetings regarding the performance of the plan, . . . providing *the designated plan managers with necessary information*," and "updating plan documents and taking action if the designated fiduciary makes imprudent decisions." *Id.* (second emphasis added).[11]

Braden alleges facts that, if true, provide plausible grounds for the Monitoring Claim. The complaint alleges that certain Defendants had the power to appoint and remove other fiduciaries, and hence the duty to monitor them. Appx. 58-59, ¶ 127. These Defendants did nothing to stop their appointed fiduciaries from approving and concealing revenue-sharing payments that corrupted the fund selection process. Appx. 15, 50-51, 60, ¶¶ 10, 103-104, 131. Nor did they stop their appointed fiduciaries from offering primarily Retail Class shares of expensive, underperforming funds to the detriment of Plan participants. Appx. 13-14, 16-17, ¶¶ 5, 12-13. Finally, they did not ensure that their appointed fiduciaries

---

[11] *See Woods v. S. Co.*, 396 F. Supp. 2d 1351, 1373 (N.D. Ga. 2005) (duty to keep appointees informed has gained "wide acceptance as an inherent facet of the more general 'duty to monitor'" (citation omitted)); *In re Sprint Corp. ERISA Litig.*, 388 F. Supp. 2d 1207, 1232 (D. Kan. 2004) ("[T]he court simply rejects the Sprint defendants' argument that the directors were free to appoint the committee members, then turn a blind eye to the appointees' performance of their duties."); *see also, e.g.*, *Hill v. BellSouth Corp.*, 313 F. Supp. 2d 1361, 1370 (N.D. Ga. 2004); *In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 284 F. Supp. 2d 511, 659 (S.D. Tex. 2003).

Appellate Case: 08-3798     Page: 62     Date Filed: 02/11/2009 Entry ID: 3516027

engaged in any meaningful effort to use the Plan's great bargaining power to obtain lower fees for comparable funds. Appx. 13-14, 15, ¶¶ 5, 10.

The district court held that because the Monitoring Claim is derivative of his Excessive-Fee, Prohibited-Transaction, and Disclosure Claims, Braden's Monitoring Claim was not viable. However, for reasons already discussed, *see supra* Parts II-IV, Braden's underlying claims should be upheld. Similarly, his Monitoring Claim should be upheld.

### B. Braden Alleges Facts That, If True, Provide Plausible Grounds for Relief Under His Co-Fiduciary Liability Claim.

To deter fiduciaries from passing the buck to one another, standing idly by when another breaches his duty, or furthering each other's breaches, ERISA provides for co-fiduciary liability. The statute imposes co-fiduciary liability if one fiduciary participates in, conceals, or enables another fiduciary's breach of duty, or knows of another fiduciary's breach of duty and fails to take reasonable steps to remedy it. ERISA § 405(a), 29 U.S.C. § 1105(a).

Once a plaintiff has successfully alleged that certain defendants breached their fiduciary duties, and has alleged facts supporting the claim that other fiduciaries knew of those breaches but took no steps to remedy them, "no more is required of them to survive a Rule 12(b)(6) motion." *Woods v. S. Co.*, 396 F. Supp. 2d 1351, 1379 (N.D. Ga. 2005) ; *accord, e.g.*, *In re Ford Motor Co. ERISA*

- 53 -

*Litig.*, — F. Supp. 2d —, 2008 WL 5377955, at *32 (E.D. Mich. Dec. 22, 2008); *In re AEP ERISA Litig.*, 327 F. Supp. 2d 812, 833 (S.D. Ohio 2004). In his complaint, Braden has done that and more. *See* Appx. 64-66, ¶¶ 149-154.

The district court dismissed Braden's Co-Fiduciary Liability Claim simply because it had already dispensed with the Excessive-Fee, Prohibited-Transaction, and Disclosure Claims. However, because these underlying claims are properly stated, the district court erred in dismissing Braden's Co-Fiduciary Liability Claim.

## VI. Braden Has Article III Standing to State Claims Under ERISA on Behalf of the Plan.

The district court ruled that Braden lacked constitutional standing to assert claims for any period before October 31, 2003, the date on which he made his first contribution to the Plan. Appx. 1210. In so doing, the court misconceived the text and structure of ERISA and overlooked controlling Supreme Court precedent.

The familiar standing requirements under Article III of the Constitution are (1) that the plaintiff have suffered an "injury in fact," (2) that there be a causal connection between that injury and the conduct of which the plaintiff complains, and (3) that a favorable decision be likely to redress the injury. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). The district court based its ruling on the first prong of this test, the "injury in fact," which is "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Id.* at 560 (citation and internal

- 54 -

quotation omitted). Because Braden had not contributed any assets to the Plan before October 31, 2003, the court below reasoned, he "was only a potential participant," was owed no fiduciary duties, and therefore could "have no injury-in-fact for any purported breach of fiduciary duty" prior to that date. Appx. 1210.

Examining the statute shows how the district court went wrong. Section 409(a) of ERISA imposes liability on fiduciaries for breaches of their duties and provides for relief. ERISA § 409(a), 29 U.S.C. § 1109(a). A separate remedial section, ERISA section 502(a)(2), 29 U.S.C. § 1132(a)(2), creates a cause of action to enforce section 409(a) by authorizing participants and others to sue for relief under section 409(a).

Section 409(a) provides that a breaching fiduciary must "make good *to [the] plan* any losses" and "restore *to [the] plan* any profits." ERISA § 409(a), 29 U.S.C. § 1109(a) (emphasis added). Thus, the relief that section authorizes inures solely to the plan, not to any individual participant therein. *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 140-42 (1985). As a logical corollary, a participant who sues under section 502(a)(2) to enforce section 409(a)—as Braden has done here—sues for injury *to the plan*, not to himself. *LaRue v. DeWolff, Boberg & Assocs., Inc.*, 128 S. Ct. 1020, 1026 (2008) ("[Section] 502(a)(2) does not provide a remedy for individual injuries distinct from plan injuries . . . ."); *Kuper v. Iovenko*, 66 F.3d 1447, 1452-53 (6th Cir. 1995) ("[ERISA section 409]

- 55 -

contemplates that breaches of fiduciary duty injure the plan, and, therefore, any recovery under such a theory must go to the plan.").[12]

The result of this statutory structure is that the "injury in fact" in this case must be injury to the Plan, and not to Braden himself (though of course Braden's individual account was injured as well—just not for the first year of the class period).  And the *type* of injury drives the standing analysis here, for "standing is gauged by the specific common-law, statutory or constitutional claims that a party presents."  *Int'l Primate Prot. League v. Adm'rs of Tulane Educ. Fund*, 500 U.S. 72, 77 (1991).  In the ERISA context, therefore, it is the statute that defines the contours of an "injury in fact."  This is precisely the kind of analysis that a district court within this Circuit has already performed in a closely analogous case.  *See Tussey v. ABB, Inc.* (Tussey I), No. 06-04305, 2007 WL 4289694, at *2 (W.D. Mo. Dec. 3, 2007) (where ERISA plaintiffs alleged excessive fees, concluding that there was standing because plaintiffs alleged "that the *Plan* ha[d] suffered an injury in fact" (emphasis added)).

The district court went wrong, then, by focusing exclusively on whether Braden was injured individually throughout the *entire* class period, and analyzing

---

[12] Braden also seeks "appropriate equitable relief" under ERISA section 502(a)(3), 29 U.S.C. § 1132(a)(3) on behalf of the Plan.  Appx. 73-74, ¶ 179. Because the relief is sought on a Plan-wide basis, the same analysis applicable to ERISA section 502(a)(2) also applies to section 502(a)(3).  *See Concha v. London*, 62 F.3d 1493, 1500 (9th Cir. 1995) (concluding that fiduciaries had standing to seek relief on behalf of their plan under section 502(a)(3)).

Appellate Case: 08-3798     Page: 66     Date Filed: 02/11/2009 Entry ID: 3516027

the standing question accordingly. Rather, although Braden's individual account did suffer injury after he made his first contribution on October 31, 2003, Braden bases his claims on injury to the Plan—injury that was occurring before he made his first contribution. *See* Appx. 74, ¶ 182 (so alleging); *see also Tussey I*, 2007 WL 4289694, at *2. Because the complaint makes clear that the plaintiff is "suing on behalf of the Plan, [and] seeking to recover losses suffered by it, such that any recovery would go to the Plan," Braden has standing for the entirety of the class period. *In re AEP ERISA Litig.*, 327 F. Supp. 2d 812, 820 (S.D. Ohio 2004); *see also* Appx. 13, 18, 21, ¶¶ 2, 20, 31.

Moreover, *Coleman v. General Electric Co.*, 643 F. Supp. 1229 (E.D. Tenn. 1986), *aff'd*, 822 F.2d 59 (6th Cir. 1987), the case on which the district court relied to support its ruling, is inapposite. There, the court concluded that the defendant was not a fiduciary at the time that it allegedly made misrepresentations. 643 F. Supp. at 1235. In this case, Defendants unquestionably have fiduciary duties to the Plan itself, *see, e.g.*, ERISA § 404(a), 29 U.S.C. § 1104(a); *Aetna Health Inc. v. Davila*, 542 U.S. 200, 206 (2004) (observing that ERISA section 502(a)(2) "allows suit against a plan fiduciary for breaches of fiduciary duty *to the plan*" (emphasis added)); *Placzek v. Strong*, 868 F.2d 1013, 1014 (8th Cir. 1989) (agreeing that "a plaintiff may only bring a cause of action for breach of fiduciary duty under ERISA when the alleged breach is one of duty to the plan itself"), and as a

Appellate Case: 08-3798     Page: 67     Date Filed: 02/11/2009 Entry ID: 3516027

participant in the Plan, Braden can enforce those duties through this action, *see* ERISA § 502(a)(2) & (3), 29 U.S.C. § 1132(a)(2) & (3) (authorizing actions by "participants").

That Braden first contributed to the Plan on October 31, 2003 is an issue not of standing but of Braden's typicality and adequacy of class representation under Federal Rule of Civil Procedure 23(a). Whether that issue has salience should be decided at the class certification rather than the pleading stage. *See Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 423 (6th Cir. 1998) ("Once his standing has been established, whether a plaintiff will be able to represent the putative class, including absent class members, depends solely on whether he is able to meet the additional criteria encompassed in Rule 23 of the Federal Rules of Civil Procedure."); *see also Forbush v. J.C. Penney Co.*, 994 F.2d 1101, 1105-06 (5th Cir. 1993).[13]

## CONCLUSION

If Braden's allegations are taken as true and all reasonable inferences are drawn in his favor, his claims plausibly allege ERISA violations and he has

---

[13] In a footnote, the district court asserted that Braden had not yet filed his class certification papers. Appx. 1210. This was mistaken. Braden had timely filed his motion for class certification, Appx. 1112-18, in accordance with the district court's scheduling order, Appx. 960, ¶ 5.

- 58 -

standing to bring them.  The district court erred in dismissing the complaint and its

order should be reversed.


Respectfully submitted,

**KELLER ROHRBACK L.L.P.**


/s/   Derek W. Loeser
Lynn Lincoln Sarko, WSBA #16569, Pro Hac Vice
Michael Woerner, WSBA #15452, Pro Hac Vice
Derek W. Loeser, WSBA #24274, Pro Hac Vice
Gretchen Freeman Cappio, WSBA #29576, Pro Hac Vice
Gretchen S. Obrist, WSBA #37071, Pro Hac Vice
Benjamin Gould, CBA #250630
1201 Third Ave., Ste 3200
Seattle, Washington  98101-3052
Telephone: (206) 623-1900
Facsimile No.: (206) 623-3384
lsarko@kellerrohrback.com
mwoerner@kellerrohrback.com
dloeser@kellerrohrback.com
gcappio@kellerrohrback.com
gobrist@kellerrohrback.com
bgould@kellerrohrback.com

**ALESHIRE ROBB, P.C.**
Gregory W. Aleshire, MOBAR #38691
William R. Robb, MOBAR #43322
2847 S. Ingram Mill Rd., Ste A-102
Springfield, MO  65804
Telephone: (417) 869-3737
Facsimile: (417) 869-5678
galeshire@aleshirerobb.com
wrobb@aleshirerobb.com

*Attorneys for Plaintiff-Appellant*

- 59 -

# CERTIFICATE OF COMPLIANCE

The undersigned attorney certifies that the foregoing brief complies with the applicable type-volume limitations set forth in Federal Rule of Appellate Procedure 32(a)(7)(B). The brief contains 13,871 words, from the Jurisdictional Statement through the Conclusion, as determined by Microsoft Office Word 2003. This brief has been prepared using Microsoft Office Word 2003 in 14-point Times New Roman font.

The undersigned also certifies that the CD-ROMs of this brief filed with the Court and served on all parties have been scanned for viruses and are virus free.

Dated: February 10, 2009

/s/   Derek W. Loeser
Derek W. Loeser
Keller Rohrback LLP
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
Telephone: (206) 623-1900

Attorneys for Appellant

Appellate Case: 08-3798     Page: 70     Date Filed: 02/11/2009 Entry ID: 3516027

# CERTIFICATE OF SERVICE

I hereby certify that on February 10, 2009, I caused true and correct copies of the Brief of the Appellant, Addendum to Brief of the Appellant, and Joint Appendix to be served via Federal Express to the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit and to counsel at the addresses listed below:

Clerk of Court Michael E. Gans
Eighth Circuit Court of Appeals
Thomas F. Eagleton Courthouse, Room 24.329
111 South 10th Street
St. Louis, MO 63102

Nancy Jo Morales Gonzalez
400 E. Ninth Street
Kansas City, MO 64106

Eric Serron
Morgan D. Hodgson
Paul J. Ondrasik Jr.
STEPTOE & JOHNSON
1330 Connecticut Avenue N.W.
Washington, D.C. 20036-0000

Kristen A. Page
William C. Martucci
SHOOK & HARDY
2555 Grand Boulevard
Kansas City, MO 64108-2613

William Robb
ALESHIRE & ROBB
2847 South Ingram Mill Road
Suite A-102
Springfield, MO 65804

Appellate Case: 08-3798    Page: 71    Date Filed: 02/11/2009 Entry ID: 3516027

Dated:  February 10, 2009

/s/   Derek W. Loeser
Derek W. Loeser
Keller Rohrback LLP
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
Telephone: (206) 623-1900

Attorney for Appellant